# CHARLESTON.

FLEMING *v.* COMMISSIONERS.

Submitted November 28, 1888.—Decided November 28, 1888.

1. PROHIBITION, WRIT OF—MINISTERIAL TRIBUNALS.

The writ of prohibition lies from a superior court not only to inferior judicial tribunals properly and technically so denominated but also to inferior ministerial tribunals possessing incidentally judicial powers, such as are known in the law as *quasi* judicial tribunals, and even in extreme cases to purely ministerial bodies, when they attempt to usurp judicial functions. (p. 614.) .

2. PROHIBITION, WRIT OF—JURISDICTION—SUPREME COURT OF APPEALS.

The Supreme Court of Appeals has concurrent original jurisdiction with the Circuit Courts in all cases of *habeas corpus, mandamus*, and prohibition. (p. 614 )

3. PROHIBITION, WRIT OF—JURISDICTION—SUPREME COURT OF APPEALS.

By a rule adopted by the Supreme Court of Appeals in this State it will not take such original jurisdiction, unless special

reasons appear therefor; but, when such reasons are made to appear, it will without hesitation exercise its jurisdiction. (p. 616.)

4. PROHIBITION, WRIT OF—UNLAWFUL EXERCISE OF JUDICIAL POWERS.
Prohibition lies only in case of the unlawful exercise of judicial functions. Acts of a mere ministerial, administrative or executive character do not fall within its province. (p. 617.)

5. PROHIBITION, WRIT OF—COUNTY COMMISSIONERS—ELECTIONS—
BOARD OF CANVASSERS.
While many of the acts of the commissioners, sitting as a board of canvassers after an election, are merely ministerial, they are not all so; and where such tribunal clothed by the statute with both ministerial and judicial powers is merely exercising its ministerial functions, to its action in such matters prohibition will not lie; but, when it is exercising its judicial functions and is proceeding in excess of its judicial powers or is usurping judicial powers, which do not belong to it, to such action a writ of prohibition will lie. (p. 617 et seq.)

6. PROHIBITION, WRIT OF—ERRORS OF BOARD OF CANVASSERS.
Mere errors and irregularities of such commissioners proceeding within their jurisdiction, are not subject to prohibition. (p. 619.)

7. PROHIBITION, WRIT OF—COUNTY COMMISSIONERS—ELECTIONS—
BOARD OF CANVASSERS.
Where commissioners were assembled under our statute in special session after an election to canvass the votes cast, and the question was presented to them, whether the precinct-commissioners, canvassers and clerks at a certain voting-place were sworn, such question was within their jurisdiction, and, whether on the evidence before them their decision was correct or incorrect, it could not be the basis for an application for a writ of prohibition. (p. 618.)

*J. W. St. Clair* and *Brown & Jackson* for petitioner.

*J. A. Hutchinson*, *S. C. Burdett* and *A. Burlew* for respondents.

JOHNSON, PRESIDENT:

On the 28th day of November, 1888, A. B. Fleming tendered to the court the following petition : " Your petitioner, A. B. Fleming, respectfully states that he is of the age of forty-nine years, and is a citizen and resident of the county of Marion and State of West Virginia, and has been a citizen and resident of said county continuously for more than

77

ten years last past; that on Tuesday, the 6th day of November, 1888, pursuant to law, a general election by the people was held throughout the State of West Virginia, for the purpose of electing, among other officers, a Governor of said State; that at said general election, held as aforesaid, your petitioner was a candidate for election by the people to the said office of Governor, and was then and there the nominee for said office of that political organization known as the 'Democratic Party,' and 'as such candidate received in every county of the State a large number of votes for said office of Governor; that at said general election one Nathan Goff was a candidate for election by the people to said office of Governor, and was then and there the nominee for said office of that political organization known as the 'Republican Party,' and as such candidate received in every county of this State a large number of votes for said office of Governor; and that, by reason of the fact that a recount is being had in three of the counties of this State, it does not yet appear who has been elected to said office of Governor, but from the known strength of said political parties in this State, and from the returns already certified in the various counties of the State, enough appears to make it certain that either your petitioner or the said Nathan Goff has been elected to the said office of Governor, but that, as between your petitioner and the said Goff, the plurality will be very small, and can not be ascertained until the said recount now being had in said three counties is completed; that among other counties in the State said general election was held in the county of Kanawha; that among the voting precincts established pursuant to law in said Kanawha county was one at Lewiston; that the commissioners of election duly appointed for said Lewiston voting precint at said general election were F. G. McConihay, James Coleman, and L. E. Kinsolving; that said commissioners of election certified that at said Lewiston voting precinct, at said general election, the number of votes cast for the said Goff and your petitioner, respectively, for said office of Governor, were as follows: For said Goff, ninety votes, and for your petitioner, seventy nine votes; that afterwards, when the commissioners of the County Court of Kanawha county met pur-

suant to law, in special session, to ascertain the result of said election held in said county, your petitioner demanded of said commissioners a recount of the ballots cast in said county at said election, and said commissioners proceeded to make such recount, and are now engaged in making the same; that the poll books of said Lewiston precinct, as returned by said commissioners of election, failed to show that the said commissioners of election were sworn for the discharge of their duties in the manner prescribed by law, and that the only evidence in said poll-books relating to such oath, or attempted oath, on their part, is set forth in a certified copy thereof, hereto attached and made part hereof, marked 'Exhibit A,' and as a matter of fact your petitioner avers that all of said commissioners were not sworn for the discharge of their said duties, as required by law, to-wit, neither the said F. G. McConihay nor the said James Coleman were so sworn. And your petitioner thereupon demanded of the said commissioners of the County Court that they should reject all the votes cast at said Lewiston precinct, but the said commissioners, without having any evidence to show that either the said McConihay or the said Coleman were sworn as required by law, other than that contained as aforesaid in said poll-books, decided that they would count the votes cast at said Lewiston precinct, and refused to reject the same. Your petitioner shows that for the said commissioners to count the votes of said Lewiston precinct, as they have decided they will do, is a plain and palpable violation of the statute of the State, and a gross usurpation of power, and a violation of the rights of your petitioner, and to his manifest prejudice and injury. Your petitioner, therefore prays this Honorable Court that a writ of prohibition issue, prohibiting the said commissioners of the County Court of Kanawha county from proceeding to count the votes cast at said Lewiston precinct as aforesaid. And as in duty bound he will ever pray," *etc.*

The petition was signed and sworn to. Exhibit A, referred to in the petition and made part thereof, is as follows:

" OATH OF COMMISSIONERS.

"*State of West Virginia, County of Kanawha—sct.:* We, F. G. McConihay, James Coleman, and Louis Kinsolving, do

solemnly swear that we will support the Constitution of the United States, and the Constitution of this State, and that in the election about to be held we will faithfully and impartially discharge the duties of our appointment to the best of our skill and judgment.　So help us God.

"F. G. McConihay,

"James Coleman,

"L. E. Kinsolving,

"Commissioners.

"Sworn to and subscribed before me this 6th day of Nov., 1888.

"——— ———.

"In and for Kanawha county."

Then, as a part of Exhibit A, follows the oath of the two clerks, signed by them, with the following *jurat* attached thereto:

"Sworn to and subscribed before me this 6th day of November, 1888.

"F. G. McConihay,

"In and for Kanawha county."

The commissioners of the County Court of Kanawha county appeared in court to said petition and demurred thereto, in which demurrer the petitioner joined.　It is insisted by the demurrant, that prohibition will in no case lie to interfere with the commissioners of a county assembled in special session under the statute to ascertain the result of an election held in the county.　In 8 Bac. Abr. 206 under the head "Prohibition," it is said: "As all external jurisdiction, whether ecclesiastical or civil, is derived from the crown, and the administration of justice is committed to a great variety of courts, hence it hath been the care of the crown that these courts keep within the limits and bounds of their several jurisdictions prescribed them by the laws and statutes of the realm, and for this purpose the writ of prohibition was framed, which issue out of the superior courts of common law to restrain the inferior courts, whether such courts be temporal, ecclesiastical, maritime, military, *etc.*, upon a suggestion that the cognizance of the matter belongs, not to such courts; and, in case they exceed their

jurisdiction, the officer who executes the sentence, and in some cases the judges that give it, are in such superior courts punishable, sometimes at the suit of the king, sometimes at the suit of the party, sometimes at the suit of both, according to the nature of the case. The object of prohibitions, in general, is the preservation of the right of the king's crown and courts, and the ease and quiet of the subject; for it is the wisdom and policy of the law to suppose both best preserved, when everything runs in its right channel, according to the original jurisdiction of every court; for by the same reason that one might be allowed to encroach another might, which could produce nothing but confusion and disorder in the administration of justice." Blackstone defines it as a writ "directed to the judge and parties of a suit in an inferior court, commanding them to cease from the prosecution thereof; upon suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court." 3 Bl. Comm. 112. Wharton's definition is: "A writ to forbid any court to proceed in any course there depending, on the suggestion that the cognizance thereof belongs not to such court. It is a remedy provided by the common law against the encroachment of jurisdiction." Whart. Law Dict. "Prohibition." High defines it: "An extraordinary judicial writ, issuing out of a court of superior jurisdiction, and directed to an inferior court, for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested." High Extr. Rem. § 762.

These definitions agree in two things: (1) that the writ lies only to an inferior court; (2) that it lies only for a usurpation or unlawful exercise of jurisdiction. This writ has been held to lie to tribunals and persons, that were not strictly speaking courts. The definition given by Allen, judge, in *Thomson* v. *Tracy*, 60 N. Y. 31, is more nearly conformable to actual practice in the use of this proceeding. He says: "A writ of prohibition is to prevent the exercise by a tribunal possessing judicial powers of jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance."

And yet even this definition does not comprehend all the

cases in which the writ has been allowed. Thus it was held in *Chambers* v. *Jennings*, 2 Salk. 553, that the writ would issue to prohibit a suit for libel in a pretended "Court of Honor. It would seem, therefore, that it is not necessary that the tribunal to which the writ issues should actually possess any judicial power. It is enough if it is attempting to exercise such power in a particular case without lawful authority." *State* v. *Commissioner*, 12 Amer. Dec. 604, note.

In *Brazie* v. *Commissioners*, 25 W. Va. 219, it was held that "the writ of prohibition lies from a superior court, not only to inferior judicial tribunals, properly and technically denominated such, but also to inferior ministerial tribunals, possessing incidentally judicial powers, or tribunals such as are known in the law as *quasi* judicial tribunals, and, even in extreme cases, to purely ministerial bodies, when they usurp judicial functions." In that case it was expressly decided, that the court had the right to interfere with the commissioners sitting to canvass the votes, and to prevent the board from the exercise of a judicial function not conferred on them by the law. The commissioners were about to hear evidence of fraudulent and illegal voting, and to reject the votes of any persons, who had voted illegally ; and this Court held that the commissioners could be and should be prevented from the exercise of such usurped judicial functions by prohibition. This Court did not take original jurisdiction, but on writ of error issued the writ.

It is contended here by counsel for demurrant, that this Court will not issue such writ upon petition for that purpose originally filed ; that the Supreme Court of Appeals is not given supervision over the inferior courts or other tribunals by way of original power; that it has such power in its appellate jurisdiction ; that the jurisdictions of both the Supreme Court of Appeals and the Circuit Court are expressed in relation to the writs of *mandamus* and prohibition in the same article in different terms ; that had the framers of the constitution intended to confer upon both courts, in relation to the said writs, the same co-ordinate or equal powers, they would certainly have used the same terms in conferring them ; that if it were intended by the constitution that the Supreme Court of Appeals should exercise the power of awarding

writs of prohibition originally against inferior courts or inferior tribunals including justices of the peace, mayors or recorders of towns or cities, it would have been in the constitution expressed in some appropriate language. He asks: "Why give that court appellate jurisdiction in cases of *mandamus* and prohibition, if it was intended to make the jurisdiction in both concurrent?" He further says, that the original jurisdiction of the Court of Appeals in prohibition seems to relate entirely to cases, where the Circuit Courts or the judges thereof or courts of like nature such as the Municipal Court of Wheeling may be usurping a jurisdiction not conferred by law.

This argument of the learned counsel is plausible but not sound. It is true, that the grant of original jurisdiction in cases of *habeas corpus, mandamus,* and prohibition to the Supreme Court of Appeals is not in the precise words used in granting the same powers to the Circuit Courts. Section 3 of article VIII provides that the Supreme Court of Appeals shall have original jurisdiction in cases of *habeas corpus, mandamus* and prohibition." Section 12 of the same article declares: " The Circuit Court shall have the supervision and control of all proceedings before justices and other inferior tribunals by *mandamus,* prohibition and *certiorari.* They shall, except in cases confined exclusively by this constitution to some other tribunal, have original and general jurisdiction of all matters at law, where the matter in controversy exclusive of interest exceeds fifty dollars; of all cases of *habeas corpus, mandamas, quo warranto* and prohibition; and of all cases in equity; and of all crimes and misdemeanors." The constitution of 1863 had similar provisions; and in a *mandamus* case the court held that original jurisdiction in cases of *mandamas* was conferred upon the Supreme Court of Appeals by section 8, art. VI of the constitution. The Court said: "The terms employed to vest such jurisdiction are general, and it is not provided, either in the constitution or the statute, when, or in what cases, it may be proper or necessary to issue the writ, nor is the mode of proceeding to obtain it prescribed. In these respects, therefore, we are to look to, and be governed by, the principles of the common law." *Douglass* v. *Loomis,* 5 W. Va. 542.

· The grant being general, it would of course follow that this Court would have original jurisdiction in all cases, where any court under the common law would have such jurisdiction. In *Buskirk* v. *Judge,* 7 W. Va. 98, 99, Haymond, P., speaking for the Court, said: "The writs of *habeas corpus, mandamus,* and prohibition are highly esteemed and appreciated by the intelligent and patriotic of all free well-regulated governments, and the absence and denial of them as remedies to the citizen has ever been a source of well-founded grief and lamentation by the same class in governments of oppression and despotism. So strong has been the regard and appreciation of the people of this State for these writs, they have not been content to leave them continual existing remedies dependent upon mere act of the legislature, but they have, for wise purposes, made them constitutional writs, and have conferred upon this Court, by the Constitution, as we have seen, original jurisdiction in such cases. The original jurisdiction conferred upon this Court in such cases is but a simple grant of power and authority to the Court to award such writs, in all proper cases, whenever prayed for."

For the first time it is now argued in this Court that the Court is limited in the exercise of original jurisdiction in cases of *mandamus* and prohibition to the courts of record in this State. The jurisdiction has been exercised without question in many cases. *Goshorn* v. *Supervisors,* 1 W. Va. 308; *Quarrier's Case,* 5 W. Va. 48; *Dunbar* v. *Dunbar,* Id. 567; *Bridges* v. *Shallcross,* 6 W. Va. 562; *Shields* v. *Bennett,* 8 W. Va. 74; *State* v. *Buchanan,* 24 W. Va. 362; *Doolittle* v. *County Court,* 28 W. Va. 158; *Richards* v. *Clarksburg,* 30 W. Va. 491, 4 S. E. Rep. 774. There is no good reason why this Court should not exercise such jurisdiction, except so far as its own convenience is concerned. The Circuit Courts have concurrent jurisdiction in such cases, and, unless there is some good reason for not applying to the Circuit Court in the first instance, the appellate court will decline to exercise such jurisdiction ; on the ground that if it should take such jurisdiction in every case that might be presented, it might so engross its time as to interfere materially with its appellate business. But if any good reason appears

to it why the application should be made to it in the first instance, rather than to a Circuit Court, it will not hesitate, in any proper case, to take jurisdiction and decide.

To prevent improper application to it, the Court on the 5th day of July, 1884, adopted the following rule: " In cases of *habeas corpus, mandamus,* and prohibition, application should not be made to this Court in the first instance, unless there are special reasons for so doing.    Petitions in such cases should, where it is at all practicable, be first presented to the Circuit Court, and, when petition is presented to this Court, the reason for not presenting it to a judge of the Circuit Court must be set forth." Rule XIII, 23 W. Va. 829.    This rule is reasonable, and was intended to prevent the appellate court from being unnecessarily burdened with such cases, which might just as well be determined in the Circuit Courts, from which, if errors are committed, a writ of error will lie to this Court.

In the case before us, as in the case of *Doolittle* v. *County Court, supra,* the reasons why this Court should take jurisdiction are apparent. · It would have been impossible to obtain a decision in the Circuit Court and take a writ of error and obtain a decision in this Court within the proper time. The results of an election should be declared as speedily as possible, and it is the duty of the courts, when applications are made to them, to as far as possible facilitate such results.

There is but one other question to be considered in this case:   Does the petition show that the petitioner is entitled to have the writ of prohibition issued?   He is in the proper court, and asking to prohibit the action of a tribunal to which the writ will lie in a proper case.   Is this such a case?

From the very nature of the writ, it lies only in case of the unlawful exercise of judicial functions.   Acts of mere ministerial, administrative or executive character do not fall within its province.   *Ex parte Braudlacht,* 2 Hill 367; *State* v. *Justices,* 41 Mo. 44; *State* v. *Gary,* 33 Wis. 93; *People* v. *Marine Court,* 36 Barb. 341; *Hockaday* v. *Newson,* 48 Mo. 196, 12 Amer. Dec. 605, note; *Brazie* v. *Commissioners,* 25 W. Va. 213; *Poteet* v. *Commissioners,* 30 W. Va. 58, 3 S. E. Rep. 97.   But while many of the acts of the commis-

sioners sitting as a board of canvassers after the election are merely ministerial, they are not all so ; and where such a tribunal, clothed by the statute with both ministerial and judicial powers, is merely exercising its ministerial functions, to its action in such matters prohibition will not lie but where it is exercising its judicial functions and is proceeding in excess of its judicial powers, or is usurping judicial powers which do not belong to it, to such actions a writ of prohibition will lie. *Brazie* v. *Commissioners*, 25 W. Va. 213.

One of the judicial powers referred to in section 21 of chapter 3 of the Code is referred to in section 8 of the same chapter, which provides that "every commissioner, canvasser, and clerk so appointed as aforesaid shall, before entering upon the discharge of his duties, take and subscribe an oath to the following effect : ' I, H—— B——, do solemnly swear that I will support the Constitution of the United States, and the Constitution of this State, and that in the election about to be held I will faithfully and impartially discharge the duties of my appointment, to the best of my skill and judgment. So help me God.' Said oath may be taken before any person authorized to administer oaths, but, if no such person be present at any place of holding an election, it may be taken before and administered by any one of the commissioners so appointed, who may in turn take the same before another of said commissioners. The said oath shall appear properly certified on one of the poll-books of every election, and in no case shall the votes taken at any place of voting be counted unless said oath so appears, or unless it be proved to the satisfaction of the commissioners of the County Court, convened at the Court House as hereinafter required, that said oath was taken before said commissioners, canvassers, and clerks entered upon the discharge of the duties of their appointment."

Clearly, then, it is a judicial duty imposed upon the commissioners, who are canvassing the votes after the election, to decide whether the oath required was in fact taken before the precinct-commissioners, clerks, and canvassers entered upon the discharge of the duties of their appointment. This they could decide from the face of the poll-books them-

selves or from the evidence of witnesses summoned before them. Therefore, if in such matter they exceeded their jurisdiction or attempted to go further than the law permitted them, the writ of prohibition would lie to such unauthorized judicial action. But it is well settled that mere errors and irregularities, where the proceeding is within the jurisdiction of the tribunal, are not subject to prohibition. *McDonald* v. *Elfe*, 1 Nott & McC. 501; *State* v. *Wakely*, 2 Nott & McC. 410; *Leonard's Case*, 3 Rich. Law 111; *Cooper* v. *Stocker*, 9 Rich. Law 292; *State* v. *Railroad Co.*, 1 S. C. 46; *Arnold* v. *Shields*, 5 Dana. 18; *People* v. *Seward*, 7 Wend. 518; *Dayton* v. *Paine*, 13 Minn. 493, (Gil. 454) 12 Amer. Dec. 608, note; *People* v. *Marine Court*, 36 Barb. 341; *Clayton* v. *Heidelberg*, 9 Smedes & M. 623; *Buskirk* v. *Judge*, 7 W. Va. 91; *State* v. *Kyle*, 8 W. Va. 711; *McConiha* v. *Guthrie*, 21 W. Va. 134.

In *State* v. *Kyle*, 8 W. Va., it was decided that the Supreme Court of Appeals can not upon an application for the writ of prohibition decide, whether the Circuit Court erred or not in overruling and revising the judgment of the County Court, that being a question proper on a writ of error. And in *McConiha* v. *Guthrie* it was held, that the rule is well established, that, where the inferior court has original jurisdiction of the cause, the writ of prohibition will lie, only where such court during the proceedings or in the conduct of the trial clearly exceeds its legitimate powers in some collateral matter arising in the cause over which it has no authority; but unless it has so exceeded its authority on an application for such writ the court above will not inquire, whether it has decided right or wrong. In that case it was decided that, although the general subject—condemnation of private property for public use—was within the jurisdiction of the court, yet the court was exceeding its jurisdiction and proceeding to condemn a dwelling-house, which was prohibited by the statute, and which was beyond its jurisdiction. True in that case the court construed the statutes, and held, that there was authority to take the dwelling-house; but the fact existed, that there was no such power in the court. A court will decide on its own jurisdiction, but, if it had no jurisdiction, prohibition will clearly lie.

In this case the commissioners under the statute had jurisdiction to hear and decide the question, whether the precinct-commissioners and clerks were sworn, and, if they decided that question wrongly, the error can not be reversed on prohibition. It was held in *Ex parte Bradley*, 9 Rich Law 95, that where on a trial of slaves for harboring the court rejected competent evidence for the defence, tending to affect the credibility of witnesses for the prosecution, it was no ground for a writ of prohibition.

Here the question to be decided by· the commissioners, and one clearly within their jurisdiction, was whether the precinct-commissioners, canvassers and clerks were sworn, before they entered upon the discharge of the duties of their appointment. If they decided, that they were so sworn, they would count the votes cast at said precinct; and if they decided upon the evidence before them, that they were not so sworn, then they would reject the votes cast at said voting place. It was a matter within their jurisdiction to decide. The petition admits, that one of the commissioners was sworn. It exhibits a writing, by which it appears, that all of them were sworn, if it contains the truth. It is true, that the usual *jurat* is wanting. It is in blank as to the signature. It may be that said paper was not competent evidence to prove the fact, that the commissioners and clerks were sworn, but it was received and treated by the commissioners, as appears by the petition, as evidence before them on the question they were about to decide. They may have decided the question upon entirely insufficient evidence. With that prohibition has nothing to do. They had the right to decide the question upon evidence; and if the evidence was insufficient, that would certainly be no ground, upon which to base an application for a writ of prohibition. The demurrer to the petition must therefore be sustained, and the writ prayed for denied.

WRIT DENIED.