## CHARLESTON.

### COUNTY COURT v. BOREMAN, JUDGE.

Submitted November 25, 1890.—Decided December 6, 1890.

PROHIBITION.

> Prohibition will not lie to prohibit an inferior court from entertaining a cause, if it has jurisdiction of cases of the same general nature and is not abusing such jurisdiction by exceeding its legitimate powers.

*J. B. Jackson, Van Winkle & Ambler* and *John A. Hutchinson* for petitioners.

*J. M. Jackson* for respondents.

BRANNON, JUDGE:

This is an application by the County Court of Wood county for a writ of prohibition against Hon. ARTHUR I. BOREMAN, judge of the Circuit Court of that county, and others, to prohibit the prosecution of a chancery suit brought by Calvin Campbell and others against the County Court and others, which had for its purpose the enjoining further proceedings in the construction of a bridge over the Little Kanawha, and the payment of money to contractors for its construction. It is another feature of the protracted litigation which has attended the construction of that bridge. Other decisions of this Court in that litigation may be found in 33 W. Va. 589 (11 S. E. Rep. 72) and *supra* p. 1 (11 S. E. Rep. 747). I state only such of the many facts presented in the record as I deem material in the decision we now make in the case before us.

Calvin Campbell and others presented to the Honorable THOMAS P. JACOB, judge of the fourth circuit, on the 2d of October, 1890, their bill in equity, stating that they were citizens and tax-payers of Wood county, and sued for themselves and all other citizens and tax-payers of that county, except the defendants, and had been assessed with taxes for the year 1890; that a county-bridge across the Little Ka-

nawha river, at the foot of Market street, Parkersburg, had been swept away by flood, except the abutments ; that the County Court then made a contract to rebuild the superstructure of iron at the former site; that the County Court, claiming that the secretary of war had warned it that the bridge must be fifty seven feet and seven inches above low-water mark, and that it could not be so built on the old site, ordered that it be built at the foot of Juliana street at a cost of eighty thousand dollars, but that it would cost, as they averred, from one hundred thousand dollars to one hundred and twenty five thousand dollars; that they had petitioned the County Court to recall its order to build at Juliana street, and build a draw-bridge at Market street, utilizing the old abutments and saving money, but the court refused to do so, and refused to make them parties to the proceeding.

The bill then proceeded to allege that the County Court was subjecting tax-payers to heavy burdens for building the bridge at Juliana street without conforming to law as to the manner of laying the county levy, and exceeded its constitutional power in this : that it had made contracts for the bridge, whereby the county had become obligated and indebted in a sum many thousands of dollars in excess of the amount levied for in the year 1890, after deducting that part of the levy made for other purposes, and adding any sum applicable to said contracts from any other source; in other words, that the amount for which the court had obligated the county for the bridge contracts is many thousand dollars more than the amount in the treasury, or to be collected into it applicable to the payment of said contracts from any source, including the amount levied for the bridge under the levy of 1890, which was up to the maximum rate of levy allowed by the constitution; and alleging further that the County Court made up an estimate of the amount necessary to be levied for the fiscal year 1890, to cover county debts and liabilities payable during the year ; and that such estimate did not give a true statement, as required previous to a county levy by section 29, c. 39, of the Code, in this : that there were then due and payable bonds of Woods county known as the "Little Kanawha Navigation

Bonds," amounting to sixteen thousand, nine hundred dollars, binding the county, which should have been paid out of the levy of 1890, and levied for in preference to other sums in said estimate, especially forty six thousand, five hundred and seventy one dollars and five cents, stated therein as to be levied for under the language, "Estimated amount necessary to pay on contract for the erection of the bridge across the Little Kanawha river, forty six thousand, five hundred and seventy one dollars and five cents;" and that there were, in addition, outstanding orders on the treasury not included in said estimate which would increase still more the indebtedness over what was provided for by said levy of 1890.

The bill charged that said sum was to be paid "on contract" for the bridge, not in full; that there was nothing in the clerk's office to show what was to be the entire cost of the bridge; and they could not have access to such contract, if it existed; that contracts had been made with Dellicker Jolly Bros. for masonry and other matters for the bridge, and with the Wrought Iron Bridge Company for iron work; but it was impossible to tell from the contract with Dellicker Jolly Bros. what the work it provided for would cost; but the bill charged that a debt was created to build the bridge in excess of what the constitution allowed. The bill charged that the county court would also incur liability for damages to adjoining land-owners, if the bridge should be built at Juliana street. It further stated that work was proceeding under said contracts, and the county's money was being paid out for it; and that there was not money to pay the cost of the bridge; and as evidence that a debt was being made beyond the constitutional limit, that the court submitted to the people a proposition to issue twenty thousand dollars bonds to finish the bridge, the order of submission in words admitting "that to make said expenditure it will be necessary to have a loan and issue bonds of the county of Wood, which can only be authorized by a vote of the qualified voters."

The bill prayed that the County Court be enjoined from collecting from tax-payers any money to be paid on contracts for constructing the bridge under the levy of 1890, or from

proceeding with its erection until such matters could be investigated, and from paying the same on contracts, and that contractors be enjoined from proceeding with work under their contracts. Such injunction was granted, but afterwards Judge JACOB modified the injunction-order so far as it prevented building the bridge, leaving in force so much as enjoined the collection and disbursement of money levied to build the bridge.

The defendant, the County Court, filed an answer charging that the suit was only one of many steps taken by the plaintiff and persons in confederation with them to defeat the building of the bridge at Juliana street, and thwart the court in the exercise of its powers, denying that a debt would, by the contracts, be created beyond the constitutional limit, and asserting the legality of the levy and its adequacy to meet all county demands, including all for which the county had yet become liable under any binding contracts; in short, traversing all the numerous facts charged in the bill. The County Court, without waiting decision of any question in the cause, has come to this Court for a prohibition against the prosecution of said chancery suit. This Court awarded a rule to show cause why such prohibition shall not issue, and the individuals prosecuting the suit moved the discharge of the rule, and filed a written answer thereto.

A question which at once confronts us in the consideration of the case is:—Does the writ of prohibition lie in this case? The Code of 1887, (c. 110, s. 1) provides that "the writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power when the inferior court has not jurisdiction of the subject-matter in controversy, or having such jurisdiction exceeds its legitimate powers." The writ is an extraordinary remedy, to be used only where the usual and ordinary forms of remedy are insufficient and inadequate to afford redress. It issues only in cases of extreme necessity, and before issuing it must appear that there is no available remedy in inferior tribunals. It is used by superior courts to restrain inferior courts from acting without jurisdiction, or from exceeding their legitimate powers, where damage or injustice may follow. It is a

remedy against encroachments of jurisdiction by inferior courts, to keep them within the limits assigned to them by law, and should in proper cases be applied without hesitation. But it does not lie for errors or grievances which may be redressed in the ordinary course of judicial proceedings, by appeal or writ of error. It is a fundamental principle, strictly enforced, that prohibition is never allowed to usurp the functions of appeal or *certiorari,* and can never be applied as a process to correct the errors of inferior tribunals. A writ proceeding on the ground of an excess or usurpation of jurisdiction in lower courts will not be permitted to become itself an instrument of usurpation, or be confounded with a writ of error or appeal which proceed upon the ground of error in the exercise of a jurisdiction which is conceded.

It neither lies to correct the errors of a subordinate court after they are committed nor to prevent such court from committing error by deciding erroneously. It does not matter whether the lower court has decided correctly or incorrectly, or may decide thereafter erroneously; if it has jurisdiction of the subject-matter in controversy, prohibition will not lie to correct its past errors or to prevent future errors that may come only from an erroneous exercise of such lawful jurisdiction.

Mere errors, irregularities or mistakes, however gross, will not justify prohibition where the lower court has jurisdiction of the subject-matter. Where the inferior court has general jurisdiction of the subject-matter, it must be allowed to exercise its own judgment of the sufficiency of the process by which it acquires jurisdiction of the special subject or person in the particular case, and its error in that regard is not a ground for prohibition, but for writ of error or appeal. This general rule is subject to this qualification: that where the inferior court has general jurisdiction of the subject-matter in controversy, but it clearly appears that in the conduct of the case it has exceeded its legitimate powers in some matter pertaining thereto, and there is no adequate remedy in the ordinary course of proceeding, the writ will there lie under the general law, certainly under our statute. See *McConiha* v. *Guthrie,* 21 W. Va. 140;

*Supervisors* v. *Wingfield,* 27 Gratt. 333; High, Extr. Rem. §§ 767, 771; *Supervisors* v. *Gorrell,* 20 Gratt. 522; *Fleming* v. *Commissioners,* 31 W. Va. 608 (8 S. E. Rep. 267). Prohibition will not lie to restrain an inferior court from proceeding in a particular case, if it has jurisdiction in cases of that kind. *Haldeman* v. *Davis,* 28 W. Va. 224; *Buskirk* v. *Judge,* 7 W. Va. 91.

Finding, under the principles just stated, that the question whether the Circuit Court of Wood county has jurisdiction of the subject-matter involved in the suit the prosecution of which we are asked to prohibit is the touchstone of the case in our hands, we must inquire whether such Circuit Court has such jurisdiction; that is, whether there is such a want of jurisdiction as will call for prohibition. The bill presents as its subject-matter, not simply the building of a county bridge; not simply whether a bridge shall be built at all, or where or how it shall be built; but it states the construction of the bridge, as we may say for the purposes of this case, as the occasion or cause of the making of contracts and engagements and the carrying on of work by the County Court which will burden the county with indebtedness without a popular vote of sanction, in excess of the limit fixed by the constitution, and the making a levy of taxes in an unlawful manner to raise money to pay on bridge contracts binding the county beyond the constitutional limit, and the enjoining of the collection of taxes under such illegal levy in furtherance of the execution of such contracts and work, and the application or the proceeds of taxes to payment for work under those contracts. True, the bill in connection with these matters does contain detailed charges of disregard of popular will as to the location of the bridge, denial of hearing to citizens on the subject of its location, irregularity and illegality of proceedings by the County Court, injudicious and unwise action by it; but treating these matters as relating to the bridge, or eliminating them from consideration as immaterial and irrelevant, still the bill contains the matter that the contracts and bridge work bind the county beyond the constitutional limit, and seeks to prevent the collection of taxes for and their application to those contracts. Has equity jurisdiction in matters of that nature?

In *List* v. *Wheeling*, 7 W. Va. 501, it was decided that equity had jurisdiction to enjoin the making of a subscription by the city to a railroad and the issue of bonds under it, because thereby the debt would exceed the limit fixed by article X, § 8, of the constitution, forbidding counties and cities from becoming "indebted, in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five *per cent.* on the value of the taxable property therein," and not then without a vote of the people.

In Pom. Eq. Jur. § 260, it is stated that in a large number of states it is held that chancery has jurisdiction "to set aside and annul any and every illegal public, official action or proceeding of county, town, or city authorities, whereby a debt against such county, town, or city would be unlawfully created, the public burden upon the community would be unlawfully enhanced, and the amount of future taxation would be unlawfully increased, as, for example, unlawful proceedings of municipal authorities to advance money or loan the public credit to a railroad, or bond the municipality in aid of a railroad, or offer or pay bounties to soldiers, or to erect public buildings, and numerous other analogous proceedings which would necessarily result in a public debt, and in taxation for its payment." In the face of every sort of objection urged against judicial interference with the governmental and executive function of taxation, these courts have uniformly upheld equity jurisdiction. Pomeroy approves the doctrine, as does also Judge Green in delivering the opinion at page 503 of 26 W. Va., in case of *Williams* v. *County Court.* Judge Green, at page 517, says that the weight of authority justifies the interposition of equity by injunction to stay the enforcement of an unconstitutional tax levied by a County Court. There are several cases in this Court recognizing equity jurisdiction to stop collection of illegal taxes. *Williams* v. *County Court, supra; Kuhn* v. *Board*, 4 W. Va. 499; *McClung* v. *Livesay*, 7 W. Va. 329; *Corrothers* v. *Board*, 16 W. Va. 527, and others.

If it be said that these are merely citizens and tax-payers who bring the injunction, and that they have no property interest affected beyond others, and therefore have no stand-

ing in court, the reply is that under the authority of Pomeroy above cited, and notes to section 260, and in all the West Virginia cases, it was expressly held that one or more citizens and tax-payers suing for themselves and others may in equity maintain such suit. See Dill. Mun. Corp. § 736; *Mayor* v. *Gill*, 21 Md. 375. If, on the facts, the question of jurisdiction of lower courts is doubtful, the writ will not go. *Haldeman* v. *Davis*, 28 W. Va. 324.

So, looking at the nature of the controversy as well as the character of the parties, I feel very sure, on an application for prohibition, that there is not so clearly a want of jurisdiction in the Circuit Court to entertain the injunction as to justify us in awarding a prohibition. Let it be understood that we do not indicate any opinion on the merits. We do not even decide, so as to bind the Circuit Court as a finality, that it has jurisdiction in the case; for, as to this matter of jurisdiction, there may well be a line of demarkation between the two courts, as the question of jurisdiction is viewed from the stand-point of the two courts, respectively, the word "jurisdiction" having a different meaning in this Court on application for prohibition from that which it has in that Court on hearing the cause. This Court has only to say whether the Circuit Court has general jurisdiction in matters of that nature, and, if it has, that is enough to deny the writ. We leave to that court the power to decide all matters, including its power to decide as to its own jurisdiction of the case, involved in the cause. We simply say that it is not usurping jurisdiction so as to warrant us in ousting it of a jurisdiction as clearly vested in it by the constitution as is the jurisdiction of this Court vested in it. It must be allowed to proceed according to the usual course of procedure until it reach a decision, when, if it has erred, there is recourse to this Court by the ordinary appeal.

This may be productive of delay and even public detriment, but this is but a common incident in judicial proceedings, and does not, I conceive, constitute an emergency to break down settled principles of judicial procedure. The law has assigned to the writ of prohibition, as to other remedial forms, its appropriate functions, and we can not disregard the walls which separate them to answer a present

47

want, real or imaginary, without producing hopeless confusion in legal procedure. Judge GREEN said in *Jelly* v. *Dils*, 27 W. Va. 267, that a disposition to resort to prohibition and other extraordinary remedies, when the law affords ample common remedies, has manifested itself in this state, and ought to be discouraged. He said that probably there had been more efforts to apply this extraordinary remedy in this State in twenty years than in Virginia in a century.

It may be asked why the prohibition is refused in this instance while it was granted in cases of *County Court* v. *Boreman* and *County Court* v. *Campbell*. There is a well-marked difference between those cases and this. In them, parties were prohibited from prosecuting a writ of *certiorari* and an appeal at law to reverse proceedings of the County Court to locate and build a bridge, and involving nothing else what ever; and we held that the County Court had sole jurisdiction to locate and build the bridge, and private individuals not affected in property could not become parties to such proceeding at law, and interfere to question a proceeding of such nature as the mere building of a bridge; but here we have a chancery suit not involving directly and solely the power of a County Court to build a bridge, but involving the legality of a levy, and the collection of taxes, and the constitutional right of citizens to defend themselves against the creation of a county-debt to be discharged by taxation, in excess of the limit enjoined by the constitution.

PROHIBITION REFUSED.    RULE DISCHARGED.