HILL *v.* STATE *ex rel.* ADAMS, DIST. ATTY.

(In Banc. June 9, 1930. Suggestion of Error Overruled July 3, 1930.)

[128 So. 878. No. 28844.]

Chas. S. Mitchell, S. H. Long, J. W. P. Boggan, C. B. Hutchinson and George H. Hill, all of Tupelo, for appellant.

**S. H. Long**, of Tupelo, for appellant.

**Mitchell & Clayton**, of Tupelo, for appellee.

**Cook, J.,** delivered the opinion of the court.

Acting under and by virtue of the terms and provisions of chapter 131, Laws of 1926, entitled "An Act creating an inferior court in the various counties of the state to be known as the county court, fixing its jurisdiction, providing for the election of judges to preside over said courts, fixing their qualifications and for other purposes," the governor of the state of Mississippi issued the following proclamation: "I, Theo. G. Bilbo, governor of the state of Mississippi, being convinced from data furnished me that the county of Lee in the state of Mississippi, has a permanent population of exceeding thirty-five thousand (35,000) inhabitants and has a municipality therein of

five thousand or more inhabitants as shown by the Federal Census of 1930, to-wit: City of Tupelo.

"Therefore by virtue of the duty imposed upon me and the authority vested in me by the Constitution and laws of the state of Mississippi, I do by these presents hereby declare by public proclamation that from and after this date a county court shall exist in the said county of Lee, said court to have all the jurisdiction and powers conferred upon county courts by the said constitution and laws of the state of Mississippi.

"In testimony whereof, I have hereunto set my hand and seal at the governor's office at Jackson, Mississippi, on this the 18th day of March A. D. 1930.

"Theo. G. Bilbo, Governor.

"Attest:

"Walker Wood, Secretary of State."

On the same date the governor appointed George H. Hill as judge of the county court of Lee county and issued to him a commission authorizing, empowering, and enjoining him "to execute and fulfill the duties of said office according to law, and to have and to hold said office from the date hereof with all the powers, privileges and emoluments thereto appertaining, until the said appointment is cancelled or revoked by competent authority, or until his successor in office shall have been appointed, qualified and installed in said office, in accordance with the laws of the state."

On receipt of this commission the said George H. Hill immediately qualified as judge of the county court of Lee county and entered upon the active discharge of the duties appertaining to the office of county judge, as prescribed by the said chapter 131, Laws of 1926; and on April 14, 1930, an information in the nature of a quo warranto was filed in the name of the state of Mississippi by the district attorney, on relation of the board of supervisors of Lee county, against the said George H. Hill, alleging the facts with reference to the proclamation of

the governor and the appointment of the said George H. Hill, and charging that, while under the said chapter 131, Laws of 1926, the governor could have issued a proclamation declaring the fact that Lee county has sufficient population and is eligible to come under the provisions of said act on the first Monday in January, 1931, he exceeded his authority in declaring the present existence of said county court, and that the attempt to put said act into effect in said county prior to the first Monday of January, 1931, was without authority, and is therefore void. It was further charged that the appointment of the said George H. Hill was void, because there was no such office in existence and could not be prior to the first Monday in January, 1931, and that the said George H. Hill was attempting to exercise the duties, powers, and privileges of the office of county judge of Lee county, although no such office existed. The petition prayed that on the final hearing thereof the court would inquire into and determine whether or not there was then a legally established county court in Lee county, and that a writ issue ousting the said defendant from the said pretended office which he unlawfully held and pretended to exercise the functions of.

To this information the defendant filed what is denominated an answer and special plea, which specifically denied that the governor exceeded his authority in issuing the proclamation declaring the county court to be presently in existence in Lee county, and in appointing the defendant to fill the office of county judge, and setting forth at length certain provisions of the said chapter 131, Laws of 1926, and the conclusions and contentions of the pleader as to the proper construction and legal effect thereof, and the powers and duties imposed upon the governor thereby. Upon motion this answer was stricken from the files, and thereupon the defendant filed a demurrer to the information, assigning as the grounds thereof the following:

"First: The information filed in said cause states no cause of action against the defendant under the law.

"Second: The information filed against defendant in said cause exhibits no legal reasons requiring the removal of defendant from office.

"Third: The information filed against defendant in this cause is insufficient, under the law, because same only stated the conclusion of the pleader without setting forth the facts or statutes upon which conclusions are based.

"Fourth: Because the information filed does not show the necessary conditions for the creation and establishment of county court, provided in section 725 of Hemingway's Code 1927, which is chapter 131, section 1, of the Laws of 1926, did not exist prior to May 1, 1926.

"Fifth: That section 730 of Hemingway's Code 1927, and chapter 131, section 6, of the Laws of 1926, does not provide that the county court shall not be in existence and the term of office of county judge shall not commence until the first Monday in January, 1931.

"Sixth: That the information filed against defendant in this cause is governed by chapter 131 of the Laws of 1926, as referred to by plaintiff in said information, and, under the term of said chapter 131 of the Laws of 1926 of the state of Mississippi, a county court was created and established in Lee county, Mississippi, on February 25, 1926, and by virtue of the terms of chapter 131 of the Laws of 1926, the office of county judge was created. The information shows on its face that the governor of the state of Mississippi, under the provisions of said act, proclaimed the county court to be in existence in Lee county, on and after March 18, 1930, and there existed a vacancy in the office of county judge in Lee county, Mississippi, and by virtue of the terms of said act it was the duty of the governor to appoint an incumbent to fill the vacancy in said office, and the information, therefore, shows on its face that the appointment of defendant to the office of

county judge was in pursuance to the provisions of said act, and therefore legal.''

Upon the hearing of the cause the court below entered an order overruling the demurrer, and, upon the defendant declining to plead further, a final order was entered adjudging that no such office as county judge exists in Lee county, or can exist for or during the year 1930, nor until the first Monday of January, 1931, and that the defendant has no right to hold said office or to discharge any duties pertaining to the office of county judge.

The first assignment of error is based upon the action of the court below in sustaining the motion to strike the answer filed by the appellant. This answer admitted the facts alleged in the information with reference to the governor's proclamation and appointment of (the appellant, but specifically denied that the office of county judge of Lee county was not in existence, and that the appointment of the appellant was void, and also set forth at length and in detail the pleader's contentions as to the legal sufficiency of the information, and the proper construction of chapter 131, Laws of 1926, and the legal effect of the governor's proclamation when issued under and by virtue of the provisions of this act. Section 4022, Code 1906, section 3221, Hemingway's Code 1927, provides that, to an information in the nature of a quo warranto ''the defendant may demur, or plead specially, or generally by plea of not guilty, with a conclusion to the country.'' The answer or special plea filed by the appellant, in its final analysis, attempted to raise only questions of law as to the legal sufficiency of the information, which were properly presentable by demurrer, and the court committed no error in striking this answer and special plea, and granting the appellant an opportunity to demur to the information. The demurrer properly presented all the points of law involved in, or necessary to, a decision of questions as to the legal rights

of the appellant under and by virtue of his appointment as a county judge.

The next assignments of error relate to the action of the court below in overruling the demurrer to the information filed against the appellant, the first contention of counsel thereunder being that, since the information expressly charged that the office of county judge of Lee county has no present legal existence, and cannot exist until the first Monday of January, 1931, quo warranto will not lie to try the appellant's right or title to said office and to remove him therefrom. Upon this point it is contended that quo warranto will lie only when the party proceeded against is either a de facto or de jure officer in possession of the office, and that it will not lie to try the title of a defendant to an alleged office which in fact and law has no legal existence, and in support of this general statement of the rule there is ample authority. 22 R. C. L. 664, 665, 709, and Cyc. 1450 and cases therein cited in support of the text.

This rule, however, has not been followed in this state, and there is authority from other states to support the view that quo warranto in the name of the state will lie to oust one who is assuming to discharge the duties of an office of a public nature which in fact has no legal existence. In the case of Howie v. Brantley, 113 Miss. 786, 74 So. 662, Ann. Cas. 1917E, 723, there was a quo warranto proceeding to test the right of Brantley to the office of state game and fish commissioner, and it was expressly held that no such office existed, and that the writ of quo warranto was properly issued. The appellant, however, contends that this announcement of the court is not controlling here, for the reason that, under the authorities, one who is elected or appointed to an office under an unconstitutional statute is a de facto officer until it is adjudged to be unconstitutional. As to whether or not under our decisions this doctrine or rule prevails in this state we express no opinion, as it is not here neces-

sarily involved. The fact is that in the Brantley case, supra, the court held that the office of fish and game commissioner had never had any existence in this state, and it was held that quo warranto was the proper proceeding to determine that fact, and to oust the one who was assuming to discharge the duties of an office that had no existence, and we do not think the applicability of this broad language should be or was intended to be, limited by any consideration of the question of whether or not the defendant was or was not a de facto officer. The office of county judge exists by law in many of the counties of the state and is an important branch of our judicial system, having both law and equity jurisdiction over property rights of considerable magnitude, and crimes of a large class, and exclusive appellate jurisdiction over certain inferior courts. The appellant is not a mere volunteer attempting to exercise the functions of an office which has or can have no legal existence in our judicial system, but he is acting under the color of authority issued by the governor of the state, and he is assuming to perform the duties and exercise the functions of county judge in the county of Lee; and the questions of whether or not the office has any legal existence in that county and whether or not the appellant is lawfully entitled to act as judge of such a court are of vital concern to the state and its citizens, and may be inquired into and determined in a quo warranto proceeding in the name of the state.

In support of this view there is ample authority in other jurisdictions. In the case of State v. O'Brien, 47 Ohio St. 464, 25 N. E. 121, 124, it was held that, while under the statutes of that state, the council of a municipal corporation is the exclusive judge of the election of its own members, quo warranto may be maintained against a person who assumes the exercise of the office of a member of the council from a ward which has no legal existence, or under an election held without lawful authority,

the court saying that "the contest of an election 'is the specific remedy provided by statute for the correction of all errors, frauds, and mistakes which may occur in the process of ascertaining and declaring the true expression of the public will.' But where there is no such office as that which a claimant assumes to fill, or there is no authority for his election thereto, the attempt by him to exercise its functions is a mere usurpation. In such case a proceeding to contest his election would be inapplicable and inappropriate, and, if the public exigencies demand it, he may, we think, be ousted by quo warranto."

In the case of Commonwealth v. Meeser, 44 Pa. 341, there was involved the question of whether or not a ward of the city of Philadelphia, which already had one member of the common council, was entitled to two, and the court held that "The supreme court cannot inquire whether the election was regularly conducted; for that duty belongs to the branch of councils in which the seat is claimed; but they can decide the question whether there was an office or vacancy to be filled. . . . This court has no authority to judge whether the election was regularly conducted or not, for that duty is assigned by law to the councils. Our duty must be confined to the decision of the question whether there was an office or vacancy to be filled."

The case of Commonwealth v. Fowler, 10 Mass. 295, was a quo warranto proceeding in which the facts and questions presented were similar to those in the case at bar. It appeared that on the 25th of February, 1812, the legislature of Massachusetts passed an act which, by its provisions, was to take effect from and after the first day of August, 1812, and which created the county of Hampden. On the 20th day of May, 1812, the governor appointed respondent Fowler to the office of judge of the probate of wills in the county of Hampden. There was filed an information to oust him on the ground that at the time of the appointment the law was not in operation,

and the appointment was on that account void. It was contended that the court was without jurisdiction by that proceeding to inquire into the respondent's right to the office, but the court held that it had jurisdiction, and that the appointment of the respondent to the office by the governor before the act went into effect was void.

The next assignments of error argued by counsel involve the merits of this controversy and call for a construction of certain provisions of said chapter 131, Laws of 1926, and particularly section 6 of said act (section 730, Hemingway's Code 1927), which reads as follows:

"The county judge shall possess all the qualifications of a circuit judge or chancellor as prescribed by the state constitution. And he shall not practice law in any of the courts of his county. He shall receive a salary of thirty-six hundred dollars per year, payable monthly out of the county treasury. He shall be elected by the qualified electors of his county, at the time and in the manner as circuit judge and chancellors are elected and shall hold his office for the same term, and vacancies in said office shall be filled in the same manner as in the office of circuit judge or chancellor. It shall be the duty of the governor to determine and declare by public proclamation on or before the first day of May, 1926, in what counties of the state the county court under this act, will exist, and in each of the counties so proclaimed a county judge shall be nominated and elected at the judicial election of 1926, and the county court shall be in existence, and the term of the office of the county judge shall commence on the first Monday in January, 1927, and not in any event before that date; and in 1930, and every four years thereafter as counties become eligible, by election provided for in this section, to come under this act, the governor shall so determine and proclaim with like effect as appertains to those proclaimed in 1926. On determining population the governor shall not be confined to the federal census, but may resort to such data

and means as shall seem to him proper, and his decision shall be final after any judge has been nominated or elected thereunder. When in the last year of any four-year period any county has fallen below the required population, or assessed wealth, it shall be the duty of the governor so to ascertain and proclaim, thereupon after the expiration of the then four-year term, the county court shall cease to exist in such county.''

Section 1 of chapter 131, Laws of 1926, provides that ''in and for each county of the state which has a permanent population of exceeding thirty-five thousand inhabitants, or, not having such a population, has an assessed valuation of real and personal property exceeding seventeen million dollars, and in either event having a municipality therein of five thousand or more inhabitants as shown by the Federal census of 1920, there is hereby created and established an inferior court to be known as the county court,'' but section 6 of the act limits this general provision by providing that it shall be the duty of the governor to determine and declare by public proclamation, on and before the first day of May, 1926, in what counties of the state the county court, under the act, will exist. Section 1 of the act authorizes and creates a county court in counties of certain designated classes, but with the proviso that such a court shall not exist or be put into operation in any county until the governor has determined and declared by public proclamation that such county has the required population or assessed value, and a municipality of five thousand or more inhabitants. To entitle counties to come under the provisions of the act it was made the duty of the governor to determine in the year 1926 in what counties of the state the county court should exist, and on or before the first day of May in that year to declare that fact by public proclamation, and it was expressly provided that, in the counties so designated by the governor, the county court should be in existence from and after

the first day of January of the following year, and in no event before that date. Under this provision of the act it is clear that, under any proclamation issued by the governor in 1926, the court had no existence until the first Monday of January, 1927, and it was manifestly the intention of the legislature to fix the terms of office of county judges in four-year cycles, concurrent with the terms of office of circuit judges and chancellors. The section provides for the nomination and election of a county judge "in each of the counties so proclaimed" at the judicial election in 1926, which was before the office of county judge came into existence in any of such counties, but it is clearly within the power of the legislature to authorize the nomination of an officer to fill an office which is to come into existence at a future date, and for a term to begin on the date the office comes into existence.

The effect of any proclamation issued by the governor in the year 1926, declaring a county eligible to come under the act being thus stated, there then arises the question as to the effect of any similar proclamation issued by the governor "in 1930, and every four years thereafter as counties become eligible . . . to come under this act." The provision of the statute in this regard is that "in 1930, and every four years thereafter as counties become eligible . . . to come under this act, the governor shall so determine and proclaim with like effect as appertains to those proclaimed in 1926." Section 6.

The effect of any proclamation issued by the governor before the first of May, 1926, being to designate or declare that a county court will exist in the designated county on and after the first Monday of the following year, and to bring into operation the provision that after any such proclamation a county court shall be in existence in the designated county after the first Monday of January, 1927, then in order to give a "like effect" to any

similar proclamation issued by the governor on or before the first day of May, 1930, it must be held that the effect of any such proclamation is to declare that in the designated county a county court shall be in existence from and after the first Monday of January following the issuance of the proclamation. Under this provision, on or before May 1, 1930, the governor was authorized and it was made his duty to determine what counties had become eligible to come under the act, and to declare by public proclamation that a county court will exist in the counties so found to be eligible, and the effect of such a proclamation was to cause a county court to be in existence from and after the first Monday of January following, but "not in any event before that date." By virtue of a subsequent provision of the same section of the act the governor is not confined to the federal census in determining the population of any county, but he may resort to such data and means as shall seem to him proper, and his decision as to the eligibility of any county becomes final after any judge has been elected or nominated thereunder. Until a judge has been nominated or elected thereunder, the proclamation is inchoate and subject to contest as to the facts therein declared and upon which it rests. It follows from the views herein expressed that, under the governor's proclamation, a county court will come into existence in Lee county on the first Monday of January, 1931, and that a judge may be nominated and elected to fill such office at the judicial election of 1930, but at the time the appellant was appointed by the governor the office of county judge was not in existence in Lee county, and there was no vacancy to be filled. The judgment of the court below will therefore be affirmed.

Affirmed.

**Ethridge, J.** (dissenting in part).

I concur in the part of the opinion holding that quo warranto is a proper remedy to challenge the authority of a person claiming to act on behalf of the public and to possess official powers under the law. It was expressly so held in Howie v. Brantley, 113 Miss. 786, 74 So. 662, Ann. Cas. 1917E, 723; and State ex rel. Collins v. Jackson, 119 Miss. 727, 81 So. 1. Apart from these decisions, however, the petition contains sufficient allegations to support a writ of prohibition, and forms of action are immaterial so long as the substance exists in the pleadings and the court has jurisdiction. Hemingway's Code 1927, section 526, Code 1906, section 729. The circuit court has jurisdiction both of quo warranto and of prohibition, and it is immaterial what the pleading is called so long as the substance exists. In 16 Encyc. Pl. · & Pr., page 1104, it is said:

"A pretended court, having no lawful jurisdiction whatever, may be restrained by the writ, when, in fact, no such court has been established," citing Ex parte Roundtree, 51 Ala. 42; State v. McMartin, 42 Minn. 30, 43 N. W. 572, and Fleming v. Commissioners, 31 W. Va. 608, 8 S. E. 267.

I am unable, however, to agree with the majority opinion in the construction placed upon the county court act. It is true that section 6, chapter 131, Laws of 1926, is involved and not clear in its meaning, but I think when the whole act is taken together, and the purpose of the legislature to establish a new court, under certain conditions, for the welfare of the public, is considered, that the court below was wrong in holding that the county court had never become effective in Lee county. Section 1, chapter 131, Laws 1926, section 725, Hemingway's Code 1927, provides: "In and for each county of the state which has a permanent population of exceeding thirty-five thousand inhabitants, or, not having such a popula-

tion, has an assessed valuation of real and personal property exceeding seventeen million dollars, and in either event having a municipality therein of five thousand or more inhabitants as shown by the federal census of 1920, there is hereby created . . . an inferior court to be known as the county court." The section then sets out the jurisdiction, and the following sections fix the practice and procedure, and method of appeals from such court, and then section 6 was enacted providing for determination as to what counties such courts should exist in, and when the act would become effective in such counties. Had section 1 stood alone, or not been modified by section 6, it is clear that the act would have become effective at once on passage, and that the governor would have had the power to appoint a judge for such court in each county having the required population. Section 6 provides for the qualifications of the county judge, saying they shall be the same as for the circuit judges and chancellors, and that he shall be elected in the same manner as such circuit judges and chancellors, and fill his office for the same term, and fixes the salary of the county judge. It then provides: "It shall be the duty of the governor to determine and declare by public proclamation on or before the first day of May, 1926, in what counties of the state the county court under this act, will exist, and in each of the counties so proclaimed a county judge shall be nominated and elected at the judicial election of 1926, and the county court shall be in existence, and the term of the office of the county judge shall commence on the first Monday in January, 1927, and not in any event before that date." This is a clear and definite fixing of the beginning of the operation of the law, it being expressly provided that it shall not be in force prior to January, 1927. Courts in existence and judges elected prior to that time were qualified to begin and hold terms of court in such counties on January 1, 1927, and they were not authorized to begin before that date. The act

does not provide on the January 1st following the election of the judge, but fixes a specific date. The statute then proceeds, saying: "And in 1930, and every four years thereafter as counties become eligible, by election provided for in this section, to come under this act, the governor shall so determine and proclaim with like effect as appertains to those proclaimed in 1926. On determining population the governor shall not be confined to the federal census, but may resort to such data and means as shall seem to him proper, and his decision shall be final after any judge has been nominated or elected thereunder."

The proclamation of the governor in 1926 had the effect to establish the fact, beyond dispute, that the county contained the necessary population prescribed by law. His proclamation could not be disputed, and the county court act became applicable to that county. It was then provided that an election should be held and a judge elected, which judge should not take his office until the first Monday in January, 1927. The second part of the statute quoted does not make the governor's proclamation conclusive, he not being confined to the federal census, but is left to determine from any proper source the information. When his proclamation was issued the fact had been determined that the population of the county was sufficient for the first section to become effective. The statute expressly provides that vacancies in the office of county judge shall be filled in the same manner as in the offices of circuit judges and chancellors. Under section 103 of the constitution the governor has the power to fill vacancies temporarily until an election shall be held.

In my opinion, when the governor found the facts to exist, his proclamation would have a prima-facie validity, and the condition would exist until disproven by evidence. In other words, the office of county judge would come into being and would continue to function until challenged in a legal manner and evidence produced to

satisfy the court that the county did not have the required population. There is no pretense that the governor was not right in his findings of fact. The preliminary report of the census shows he was correct, and there is no authority in this act for suspending the operation of the law, after the governor has ascertained the facts, until the first Monday in January, 1931. The law does not say so, and the provision of the preceding part of the section fixes the first Monday in January, 1927, for county courts to come into existence, and this provision is not carried forward into the latter part of the section. It must be presumed that the statute intended to provide for the public needs in expediting the administration of law, and when the conditions come into existence, then, under section 1 of the act, the county court is in existence. Its operation has not been suspended except during 1926. There is nothing in the language of section 6 of the act, section 730, Hemingway's Code 1927, that carries to my mind any idea of suspension of the functions of this court. Its need is just as urgent prior to 1931 as during and after that year.

Section 6 also provides for counties not having the required property to come under the provisions of that act, to provide for the office of county court therein by an election, which if carried, shall be certified to the secretary of state, and the governor will then proclaim the existence of such court in such county, but it does not provide that pending the election a person may not be appointed to fill the office. The preceding part of the section, however, prescribes that vacancies shall be filled in the same manner as vacancies in the office of circuit judges and chancellors. Those offices have always been filled by preliminary appointments pending an election. The court is supposed to continue in existence and to function in the administration of justice from the beginning of its creation. The necessary population having been found by the governor, and there being no dispute as to

this finding being correct, the people are entitled to have the court function at once for the disposition of business that may be lawfully brought therein.

Suppose no contest had been made, and the court proceeded and functioned during the remainder of the present year, would all its proceedings be absolutely void? It seems to me that it could not be so held, yet the legal effect of the majority opinion is to render void absolutely all proceedings had in the county court prior to the order of the circuit court adjudging it not to be in existtence.