STATE OF WEST VIRGINIA EX REL.

ROBERT R. SKINNER

*v.*

PIERRE E. DOSTERT, JUDGE OF THE CIRCUIT COURT

OF JEFFERSON COUNTY, WEST VIRGINIA; E. W. DAY,

MAGISTRATE OF JEFFERSON COUNTY, WEST VIRGINIA;

PETER H. DOUGHERTY,

MAGISTRATE OF JEFFERSON COUNTY, WEST VIRGINIA

(No. 14911)

Decided April 3, 1981.

744

*Robert R. Skinner* for relator.

*Pierre E. Dostert,* Judge, Circuit Court, for respondents.

McGraw, Justice:

The Prosecuting Attorney of Jefferson County here seeks a Writ of Prohibition to prevent enforcement of an "Administrative Order" ordered entered by the Circuit Judge of Jefferson County.

The Prosecuting Attorney complains that the "order" invades the jurisdiction of the Magistrate Court, that it invades the discretionary power of the Prosecuting

Attorney's office and that the order is void because it was entered without "pleading, process, notice or hearing".

We agree with the Prosecuting Attorney and award the writ.

The Circuit Judge of Jefferson County, upon his own motion, ordered the entry of an "administrative order" which specified a procedure for the dismissal of warrants by a Magistrate court.

In part the order provides:

> "After a warrant is obtained, and the matter is referred to Circuit Court for the appointment of counsel, the Magistrate Court then has jurisdiction to perform only one function: to conduct a preliminary hearing. Discontinuance of the prosecution to the Grand Jury, or by *nolle prosequi* before this Court after an indictment is returned.

> *Nolle prosequi* does lie in the case of a misdemeanor pending before the Magistrate Court. However, such should not be granted unless the complaining witness is aware of the dismissal by such a motion. A prosecution may also be discontinued at the request of the complaining witness in writing, withdrawing the complaint upon which the warrant is based. It is not within the power of the Prosecuting Attorney to dismiss a felony warrant after this Court has taken cognizance of the case, without an Order from this Court. Any questions pertaining to this may be presented to this Court.

The prosecutor contends that the order "usurped the power of":

> (1) the prosecuting attorney by purporting to authorize the magistrates to dismiss future criminal actions at the instance of the complainant without the consent of the prosecuting attorney[;]

> (2) the prosecuting attorney by purporting to require the prosecuting attorney, in all future criminal actions, to obtain the approval of the circuit court before moving a magistrate to enter *nolle pros* in a criminal action pending in magistrate court[;]

(3) the magistrates by purporting to prohibit them from dismissing future criminal actions in magistrate court without the approval of the circuit court[.]"

The prosecutor also argues that the order "attempts to affect all future criminal prosecutions in Magistrate Court . . ., that . . . it attempts, in all criminal cases, to limit the power of a Magistrate to enter a *nolle prosequi* . . ., that it seeks to prevent the prosecuting attorney from entering [moving] a *nolle pros*, [or] . . . to dismiss a prosecution" and finally that the order is void because "it was entered without pleading, process, notice or hearing". The judge answered our show cause order and in speaking to the issue raised in this case, said: "*Nolle Prosequi* is a plea that lies to a warrant for a misdemeanor or an indictment for a felony. It does not constitute a valid discontinuance of a warrant for a felony, since the warrant is not a statement charging the defendant. It is merely the means of apprehending a felon prior to indictment."

The prosecutor, in speaking to the issue being considered here, stated, by brief, the "facts of the case".

Respondent Pierre Dostert, Judge of the Circuit Court of Jefferson County, on June 17, 1980, entered an "Administrative Order" No. 80-A-1, Relator's Exhibit A, and thereafter caused attested copies to be mailed to the Relator and the Magistrate court clerk. The order was entered without pleading, process, notice or hearing of any kind. The order although somewhat ambiguous, purported to command the following: (1) It prohibited magistrates in Jefferson County, in all future felony actions, from entering nolle pros at the instances of the state between the time of warrant issuance and the time of a finding of probable cause. (2) It purported to require the magistrate or the State, in all future misdemeanor prosecutions, to notify the complainant before entering nolle pros. (3) It purported to give a complainant the power to discontinue a misdemeanor prosecution without the state's acquiescence. (4) It purported to require the State to petition and obtain the approval of the circuit court

> before entering nolle pros of a felony in magistrate
> court. The order did not purport to control
> disposition of the Jack Lee Rose warrants, which
> had been dismissed on a nolle motion of the State
> prior to the entry of the June 17 order.

The judge does not dispute the prosecutor's characterization of the facts.

From our review of the order and the pleadings filed in this case, we think the major issue fairly presented by the record is: under what circumstances and by what means can a superior court control the disposition of proceedings in an inferior court? The order of record also raises the question of the extent to which a circuit court may control the prosecuting attorney's actions in magistrate court. This case presents an excellent factual situation for discussing the duties and prerogatives of these judicial and executive officers for it arises out of a dispute concerning *nolle prosequi,* a concept in the law which is recited throughout the judge's order.

I

We think that a proper resolution of the issues presented by this case calls first for a review of the origin and nature of *nolle prosequi.* At common law, *nolle prosequi* was nothing more than a statement by the prosecutor that he would proceed no further in a criminal case which, in and of itself, terminated the prosecution. The discretion to discontinue prosecution rested solely with the prosecutor and it was unnecessary to obtain the permission of the court to give legal effect to this decision. 6A M.J. *Dismissal* § 38; 22A C.J.S. *Criminal Law* § 457. The duty of the court to direct the entry of the *nolle prosequi* on the rolls was purely ministerial. This was so because the sovereign, personified in the King, was theoretically the only party interested in the prosecution. The prosecutor and his supervisor, the Attorney General, were agents of the King, answerable only to him. If the agent of the sovereign desired that a prosecution should cease, that was the end of the matter. The public subjects had no interest and could not be heard to complain.

Except for historical interest, the prerogatives of the King of England are not germane to West Virginia public law. The American constitutional system, under which West Virginia's government is organized, W.Va. Const. art. 1, § 1, changed substantially the operative theory of sovereignty and identified the sovereign, whose will legitimizes authority, as the people. Virginia Declaration of Rights, c. 1, § 2 (May 6, 1776); the Declaration of Independence (July 4, 1776); U.S. Const. Preamble; W.Va. Const. art. 2, § 2. Thus, the long-standing practice in this State, as well as in Virginia before 1863, has always been that a *nolle prosequi* entered by the prosecuting attorney without the consent of the court is invalid and will not discharge the accused from prosecution. *Denham v. Robinson,* 72 W.Va. 243, 77 S.E. 970 (1913); *Anonymous,* 3 Va. (1 Va. Cas.) 139 (1803) (misdemeanors and felonies). *See also,* W.Va. Code, § 62-2-25 (1977 Replacement Vol.). *Nolle prosequi,* which was at common law a statement that the king, through his attorney general, would proceed no further with a prosecution, is now fundamentally a motion to the court requesting that the cause be dismissed, and may properly be cast as a motion to dismiss. The decision to grant or deny the motion is now a judicial function which checks the unfettered discretion of the prosecutor at common law.

## II

Fundamental to the concept of judicial function is the power of the court to decide a case as it so sees it. " 'Judicial power' consists of three elements, namely, examination of the truth of the fact, determination of the law arising upon that fact, and ascertainment and application of the remedy." *Cedar Rapids Human Rights Commission v. Cedar Rapids Community School District,* 222 N.W.2d 391, 395 (Iowa 1974). "[I]f the officer is to use his discretion as to whether relief should be granted, or if he is required to examine evidence and decide questions of law and fact, his duty is judicial rather than ministerial." *Taylor County Farm Bureau v. Board of Supervisors of Taylor County,* 218 Iowa 937, 252 N.W. 498, 501 (1934). The magistrate court is a constitutionally created court with a constitutional

obligation to apply the law and decide the case unfettered by any influences alien to the case or the process. W.Va. Const. art. 3, § 17. "Where the inferior court has general jurisdiction of the subject-matter, it must be allowed to exercise its own judgment. . . ." *Wood County Court v. Boreman,* 34 W.Va. 362, 366, 12 S.E. 490, 492 (1890). This judgment must be made free of "partisan interests, public clamor, or fear of criticism." Canon 3(A)(1), *Judicial Code of Ethics.* Thus, the judicial office of magistrate requires the officer, a magistrate, to perform the judicial function, the end result of which is the exercise of judicial power. If errors are made in the exercise of this judicial power, they are correctable by appropriate judicial proceedings. *Bracey v. Robinson,* 83 W.Va. 9, 97 S.E. 295 (1918). The constitutionally created office of magistrate is an independent judicial office and the exercise of the power of the office is subject only to the constitution and the law.

### III

Judge Dostert represents that in his circuit "the prosecuting attorney is not involved in 99% of the misdemeanor cases in magistrate court". This is not as it should be for if the official responsible for prosecuting crimes fails to do his or her job, our system devised to control criminal conduct does not work.

As the entry of a *nolle prosequi* is subject to approval of the proper court, the question of the prosecutor's powers and duties in arriving at the decision to move a *nolle prosequi* warrants elucidation.

The prosecuting attorney is the constitutional officer charged with the responsibility of instituting prosecutions and securing convictions on behalf of the State of those who violate the criminal law. W.Va. Const. art. 9, § 1; W.Va. Code § 7-4-1 (1976 Replacement Vol.); *State v. Britton,* 157 W.Va. 711, 203 S.E.2d 462 (1974). He is charged with the duty of prosecuting all crimes, one class of which is misdemeanors. *Moundsville v. Fountain, supra.* W.Va. Code § 7-4-1 (1976 Replacement Vol), which enumerates the duties of the prosecuting attorney, reads, in pertinent part:

>It shall be the duty of the prosecuting attorney to attend to the criminal business of the State in the county in which he is elected and qualified, and when he has information of the violation of any penal law committed within such county, he shall institute and prosecute all necessary and proper proceedings against the offender. . . .

This statute can be easily understood in its most technical sense by any literate person who has a decent English language dictionary close at hand. It is the duty of the prosecuting attorney, when informed of the violation of our penal law, to prosecute the offender. In the interest of muscular economy, to save the reader the effort of reaching for his dictionary, we draw the following definitions from our Webster's New Collegiate Dictionary (5th Ed. 1979) on the meaning of three operative words in the statute, "duty", "criminal", and "prosecute".

"Duty" means "a moral or legal obligation." "Criminal" means "relating to crime and its punishment". "Prosecute" means "to pursue for redress or punishment of a crime or violation of law in due legal form before a legal tribunal". Aware as we are of the tautological nature of judicial commentary, we also offer these definitions arising from American case law. "Duty is that which a person is bound by obligation to do. . . ." *State v. LaPorte*, 58 Wash.2d 816, 365 P.2d 24 (1961). "The true definition of the word 'criminal' . . . is a violation of any law or ordinance of man subjecting the offender to public punishment including fine and imprisonment. . . ." *City of Charleston v. Beller*, 45 W.Va. 44, 30 S.E. 158 (1898). "To prosecute is to proceed against judicially and a prosecution is . . . the means . . . to bring a supposed offender to justice. . . " *State v. Bowles*, 70 Kan. 821, 79 P.2d 726 (1903).

Clearly, the prosecutor is obliged to participate in the prosecution of misdemeanor charges in his or her county. "One who accepts a public office does so *cum onere*, that is, he assumes the burdens and the obligations of the office as well as its benefits, subjects himself to all constitutional and legislative provisions relating to the office, and undertakes to perform all the duties imposed on its

occupant; and while he remains in office he must perform all such duties. *Perry v. Coffman,* 148 W.Va. 608, 137 S.E.2d 5 (1964); *Gwen v. Jones,* 144 W.Va. 276, 108 S.E.2d 1, *adhered to on rehearing,* 144 W.Va. 295, 110 S.E.2d 329 (1959); *State ex rel. Preissler v. Dostert,* 162 W.Va. 719, 260 S.E.2d 279, 286 (1979). Simply said, if the prosecutor gets the check, he must do the job. Failure of the prosecutor to perform the duties imposed by W.Va. Code § 7-4-1 would make him answerable under W.Va. Const. art. 9, § 4. W.Va. Code § 6-6-7 (1979 Replacement Vol.); and W.Va. Code § 11-1-5 (1974 Replacement Vol.).

The duty to prosecute is qualified, however, in that the prosecuting attorney is vested with discretion in the control of criminal causes, which is committed to him for the public good and for the vindication of the public interest. *See State v. Doyle,* 64 W.Va. 366, 62 S.E. 453 (1908); *Ganger v. Peyton,* 379 F.2d 709 (4th Cir. 1967); *Macon v. Com.,* 187 Va. 363, 46 S.E.2d 396 (1948). Thus, the prosecutor in his discretion may decide which of several possible charges he will bring against an accused. *State v. Doyle, supra; Hensley v. City of Norfolk,* 216 Va. 369, 218 S.E.2d 735 (1975). The prosecuting attorney, in his sound discretion, may refrain from prosecuting a cause or, having commenced a prosecution, may move the dismissal of a cause, when in good faith and without corrupt motivation or influence, he thinks that the guilt of the accused is doubtful or not capable of adequate proof. *See generally,* Annot., 155 A.L.R. 10; 63 Am.Jur.2d, *Prosecuting Attorneys* § 26 (1972). The responsibility of a prosecutor is to seek justice, not merely to convict. *State v. Britton, supra.*

However, while the prosecutor has discretion in the control of criminal cases, he must exercise that discretion so as to fulfill his duty to the people. W.Va. Const. art. 3, § 2. The courts of the State are open to all who seek redress of grievances. W.Va. Const. art. 3, § 17. As criminal offenses are offenses against the State which must be prosecuted in the name of the State, W.Va. Const. art. 2, §§ 6, 8; W.Va. Code § 62-9-1 (1977 Replacement Vol.); *Moundsville v. Fountain,* 27 W.Va. 182 (1885), the prosecutor, as the officer charged with prosecuting such offenses, has a duty to vindicate the

victim's and the public's constitutional right of redress for a criminal invasion of rights. The "spirit of the law" has long been and it has been long held that "[t]he public has rights as well as the accused, and one of the first of these is that of redressing or punishing their wrongs". *Ex parte Santee* 2 Va.Cas. 364 (1823). Although as we stated above, the prosecuting attorney, in his discretion, may move to discontinue a prosecution where he has a bona fide belief that prosecution will not succeed, he cannot arbitrarily and capriciously deny persons wronged by the criminal acts of others access to the courts. The prosecutor, like any other executive officer, must have sound reasons for his actions.

Needless to say, the prosecutor has a duty to investigate the facts of written citizen complaints, even those inartfully drawn, before moving a *nolle pros* to dismiss the cause. This investigation will necessitate a review of the evidence which will commonly require meaningful communication with a victim or a complaining witness. This is not to say that the prosecuting attorney is required to seek the permission of the complaining witness before moving to dismiss a case. The exercise of prosecutorial discretion in such instances is not subject to control or improper interference by an interested individual. *Ganger v. Peyton, supra.* As the case is instituted in the name of the State, the prosecuting officer of the State alone is responsible for the decision to move for a dismissal. *See* W.Va. Const. art. 2, § 8; *Moundsville v. Fountain, supra*; 22A C.J.S. *Criminal Law* § 457. However, as the prosecutor has a duty to support his action with reviewable reasons and since the court entertaining the motion to dismiss is entitled to have all of the relevant facts of the case before it rules on the motion, the prosecutor must have a knowledge of all the circumstances surrounding the case before he can legitimately move for a *nolle prosequi*. A prosecuting attorney who does not investigate the facts of a sworn complaint so as to enable him to make an informed decision as to whether to continue prosecution or to move a *nolle prosequi* abuses the discretion of his office. Nevertheless, the decision to move to dismiss or to *nolle prosequi* a criminal

warrant is a proper exercise of prosecutorial authority which may not be invaded by an extra judicial order.

## IV

Having discussed the nature of *nolle prosequi* and the roles of the judicial officer and the prosecutor, we turn to the jurisdictional issues presented by this case. Initially we note that there is a question fairly raised here respecting when a magistrate court is divested of its limited jurisdiction in felony cases. While it is clear that the circuit court may assume jurisdiction initially by issuing a warrant, *State ex rel. Burdette v. Scott*, 163 W.Va. 705, 259 S.E.2d 626 (1979), a question here is when does the magistrate court lose and the circuit court gain jurisdiction in a felony case initiated by a warrant issuing from the magistrate court. The magistrate, under W.Va. Code § 50-2-3, has jurisdiction "of all misdemeanor offenses committed in the county and to conduct preliminary examinations on warrants charging felonies committed within the county". It would seem that in cases where the magistrate court initially issued the warrant, jurisdiction continues there until the magistrate makes a finding of probable cause to hold the accused to the grand jury or until the grand jury acts to indict.

In addressing the issue of whether a magistrate has the authority to grant a motion for return of illegally seized property by a felony defendant whose case had been dismissed for want of probable cause at the preliminary hearing, we said in *State ex rel. White v. Melton*, ____ W.Va. ____, 273 S.E.2d 81 (1980) "that discharge of a felony defendant is within the magistrate's jurisdiction. If a magistrate has jurisdiction over a person charged in a felony warrant throughout the preliminary examination stage, and can release that person, surely he has jurisdiction to return property unlawfully seized for which there was no warrant." 273 S.E.2d at 84. Surely, then, the magistrate has jurisdiction to entertain a motion to dismiss before a finding of probable cause.

In light of our determination on the question of the magistrate's authority to consider a motion to dismiss and

of our discussion earlier which established that the decision to grant a motion to dismiss is a judicial function, we must next address the question of whether a circuit court can properly control by order the disposition of such motions in the magistrate court. We have not been directed to a case on point nor has our research revealed any. We have reviewed, however, cases dealing with control of inferior courts by superior courts. *Bracy v. Robinson,* 83 W.Va. 9, 97 S.E. 295 (1918); *Cincinnati P., B.S. & P. Packet Co. v. Bellville,* 55 W.Va. 560, 47 S.E. 301 (1904); *Wood County Court v. Boreman,* 34 W.Va. 362, 12 S.E. 490 (1890); *Haldeman v. Davis,* 28 W.Va. 324 (1886). With the teachings of these cases in mind, we repair to the fundamentals as mandated by our constitution, W.Va. Const. art. 3, § 20.

The framers of the Judicial Reorganization Amendment, article 8, prescribed the distribution of the judicial authority and function. The constitution outlines an orderly system for the disposition of conflicts which can arise when elements of our fiercely independent judicial machinery contrast. The beauty of this system lies in its simplicity. Article 8 provides two devices for the control of the magistrate court by the circuit court. Section 6 of that article, which also establishes appellate jurisdiction in the circuit court over judgments in the magistrate court, states, in part, that "[c]ircuit courts shall have control of all proceedings before magistrate courts by mandamus, prohibition and certiorari". Article 8, § 6 also provides that "[s]ubject to the supervisory control of the supreme court of appeals, each circuit court shall have general supervisory control over all magistrate courts in the circuit". The focus of our inquiry is whether the circuit court here was empowered under one or both of these provisions to enter the order which is the subject of this proceeding.

A historical review of the common law writs of mandamus, prohibition and certiorari reveals that they have changed little over the centuries.[1] *See,* W.Va. Code

---

[1] Blackstone's definition of mandamus is as accurate today as it was two-hundred years ago.

Chapter 53. These writs issue to control judicial proceed-

A writ of *mandamus* is, in general, a command issuing in the king's name from the court of king's bench, and directed to any person, corporation, or inferior court of judicature within the king's dominions, requiring them to do some *particular* thing therein specified, which appertains to their office and duty, and which the court of king's bench has previously determined, or at least supposes, to be consonant to right and justice . . .

3 W. Blackstone's Commentaries* 110.

The definition of mandamus found in current texts virtually echos Blackstone's early comments on the writ.

Mandamus is a command from a court of law of competent jurisdiction, in the name of the state or sovereign, directed to some inferior court, tribunal or board, or to some corporation or person, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law.

52 Am. Jur.2d, *Mandamus* § 1 (1964).

Like mandamus, the definition of prohibition has changed little throughout history. Blackstone notes that:

Prohibition is a writ . . . directed to the judge and the parties of a suit in any inferior court, commanding them to cease from the prosecution thereof, upon a suggestion, that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court . . . or, if, in handling matters clearly within their cognizance, they they transgress the grounds prescribed to them by the laws of England; . . . in such cases also a prohibition will be awarded.

3 W. Blackstone, Commentaries* 112.

The definition contained in one current reference source is substantially the same as Blackstone's. "The writ [prohibition] is commonly defined as one to prevent a tribunal possessing judicial or quasijudicial powers from exercising jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance." 63 Am. Jur.2d *Prohibition* § 1 (1964).

Certiorari varies somewhat from the common law use of the writ. At common law, the writ issued out of Chancery or the King's Bench and commanded an inferior tribunal to return the records of a cause. It was frequently employed to consider the validity of an indictment and proceedings thereon and to prevent a partial and insufficient trial. It was sometimes issued after final judgment to meet the ends of justice where no other remedy was available. Chitty's Crim. Law, Chap. 9, *cited in Ashworth v. Hatcher*, 98 W.Va. 323, 128 S.E. 93 (1924).

In our law, certiorari partakes of the nature of administration, for it requires the delivery of the roll to the appellate tribunal. It is a writ in aid of jurisdiction, for appeal cannot be had without a record. In the

ings in the inferior court upon the initiation of formal proceedings in the superior court by a party to the action in the lower court. Any order promulgated pursuant to the power of the circuit court to control judicial proceedings in magistrate court by issuance of these extraordinary writs must be the result of an active justiciable controversy over which the superior court has jurisdiction.

Here there are no pleadings of record which would invoke the jurisdiction of the circuit court to control the proceedings in the magistrate court. The judge simply entered an order *sua sponte* by which he informed the magistrate that motions to dismiss could not be entertained by the magistrate court. In this respect, this dispute is analogous to that in *State ex rel. Preissler v. Dostert*, 163 W.Va. 719, 260 S.E.2d 279 (1979), where although no pleadings had been filed, the court acted *sua sponte* to impose its will through an order entered without the invocation of jurisdiction by any party's pleadings. In *Preissler* we held: "Where there is no showing on the record that any party has properly instituted proceedings in a court of record, the court cannot exercise jurisdiction over the matter and any purported order or judgment entered is void and its enforcement may be restrained by prohibition". Syl. Pt. 1, *State ex rel. Preissler v. Dostert, supra; Duncan v. Tucker County Board of Education*, 149 W.Va. 285, 140 S.E.2d 613 (1965).[2]

As a general rule, any order promulgated *sua sponte* by a superior court which purports to control the judicial function in proceedings in a lower court is void *ab initio*. In

case of recalcitrant tribunals or clerks, it provides a proceeding to require them to account for the record.

[2] The circuit judge contends that because he appointed counsel in this case, he has assumed jurisdiction of the case and any motion to dismiss the action must be made in his court. The proposition is untenable. Were the circuit judge to assume jurisdiction of every case in which he appointed counsel, magistrate courts would exist solely for those individuals who could afford their own counsel and whose cases otherwise were not within the circuit court's jurisdiction. Although the power to appoint counsel rests in the circuit court, merely appointing counsel will not divest the magistrate court of jurisdiction when the magistrate is still performing a judicial function.

our adversarial system of jurisprudence, the judge is not a party, he is the referee. Canon 3, *Judicial Code of Ethics.* The judge is as an official of an athletic event; an umpire or referee in a ballgame. As his duty, he must require all of the participants to play by the rules. The referee or umpire must not become an adversarial participant in the scenario for if he does, he brings discredit to the integrity of the system. For a judge to participate as an adversary denies to the people one fundamental element of due process: the right to an unbiased tribunal. W.Va. Const. art. 3, § 17. As we noted in *Preissler, supra,* "[t]o permit the judge to invoke the jurisdiction of his court *sua sponte* would place him in a position of a complainant in violation of the ancient homily of the law that no man be a judge in his own case." (Footnote omitted). 260 S.E.2d at 285.

As no formal proceeding in mandamus, prohibition or certiorari was instituted by any party in the circuit court which would invoke the jurisdiction of that court to control by extraordinary proceedings the judicial function of the magistrate in deciding whether to grant or deny the prosecutor's motion to dismiss, we must conclude that the order entered by the circuit court below was not promulgated pursuant to the constitutional grant of such powers in Article 8, § 6 of the state constitution.[3] Our only remaining inquiry, then, is whether the judge was empowered to enter the order pursuant to the grant of "general supervisory control".

Section 6 of Article 8 of our constitution provides for the circuit court to exercise limited administrative control over the magistrate courts in the circuit.

> Subject to the supervisory control of the supreme court of appeals, each circuit court shall have general supervisory control over all magistrate courts in the circuit. Under the direction of the Chief Justice of the Supreme Court of Appeals, the

---

[3] It should be noted, as well, that the order of the circuit court did not meet the notice requirements of the West Virginia Rules of Civil Procedure respecting extraordinary proceedings, which are a prerequisite to the invocation of jurisdiction. W.Va. R.Civ.P. 81 (a)(6).

judge of the circuit court, or the chief judge thereof if there be more than one judge of the circuit court, shall be the administrative head of the circuit court and all magistrate courts in the circuit.

Article 8, section 10 implicitly defines the extent of those powers.

The *division of the business* of a magistrate court in any county in which there shall be more than one magistrate of such court between the magistrates thereof so as *to promote and secure the convenient and expeditious transaction of such business* shall be determined in such manner or by such method as shall be prescribed by the judge of the circuit court of such county, or the chief judge thereof, if there be more than one judge of such circuit court. (Emphasis added).

The plain and apparent meaning of these sections is that the circuit court may exercise the administrative powers necessary to "secure the convenient and expeditious transaction of . . . business". The operative phrases are "supervisory control", "administrative head", "division of business", and "convenient and expeditious transaction of such business". These operative phrases describe functions executive in nature. In essence, the language of article 8, sections 6 and 10 are the grants of executive power within the judiciary. They are "housekeeping" provisions in aid of article 3, section 17 of the constitution and are designed to promote an efficient magistrate system. They do not purport to confer upon the circuit court the power to interfere with the judicial function of the magistrate or to control judicial discretion in any particular case before the magistrate.

Our reading of the plain language of these provisions is fortified by the inconsistencies that arise out of an alternative interpretation. If the grant of "general supervisory control" power in article 8, section 6 were intended to vest the circuit court with control over particular judicial proceedings in magistrate court, there would be no need to confer upon the circuit court the power to control such proceedings by the extraordinary writs of

mandamus, prohibition or certiorari. There would be no need to file pleadings or to comply with notice requirements for all complaints could be disposed of by administrative order. If the circuit court were empowered to control judicial discretion of the magistrate court in the exercise of its general supervisory powers, article 8, section 10 would have been drafted so as to include all legislatively created circuits, not just those with two or more magistrates.

We note, too, that a review of Chapter 50 of the West Virginia Code supports the view that control of the judicial function is a different matter entirely from administrative control. That chapter sets out in article one the qualifications for the magisterial office as well certain administrative duties. Article two defines the parameters of the constitutionally conferred jurisdiction of magistrate courts. Article three proscribes the costs and the methods of handling records in magistrate courts. Articles four, five, and six set out the procedures for pre-trial, trials and appeals and for the enforcement of judgments. None of these articles purports to vest in the circuit court administrative powers to control the judicial function in magistrate courts. It is clear that control of judicial proceedings must be by historically defined and understood, substantive and procedural mechanisms and not by the exercise of administrative supervision.

The "Administrative Order" of the circuit court below purports to control a conclusion which can only be arrived at after a consideration of the facts and the law by the magistrate. It partakes of the circuit court's administrative powers to assert control over purely judicial proceedings, and denies the magistrate the exercise of the intellectual function essential to a ruling on a motion to dismiss, thereby invading the jurisdiction of the magistrate court. *See, e.g., Bracy v. Robinson,* 83 W.Va. 9, 97 S.E. 295 (1918); *Cincinnati, P., B.S. & P. Packet Co. v. Bellville,* 55 W.Va. 560, 47 S.E. 301 (1904); *Wood County Court v. Boreman,* 34 W.Va. 362, 12 S.E. 490 (1890); *Haldeman v. Davis,* 28 W.Va. 324 (1886). Such an approach is sufficiently unprecedented to be labeled an "extraordinary order". It requires the magistrate to act in a ministerial manner. It

ignores the magistrate's judicial function to make an independent evaluation of the facts and the law in any particular case and to weigh and wed them so as to support a legal conclusion. *See State ex rel. White v. Melton, supra.* It is nothing more than an attempt by the circuit court to control the judicial discretion of the magistrate by administrative fiat.

A circuit court may not invade the jurisdiction or the judicial function of a magistrate court under the guise of the administrative powers granted by W.Va. Const. art. 8, § 6. An order of the circuit court which purports to control the exercise of judicial discretion by the magistrate pursuant to the general supervisory powers granted the circuit court under W.Va. Const. art. 8, § 6 is a vain act beyond the contemplation of the constitutionally prescribed methods of judicial control of inferior court and prohibition lies to restrain its enforcement.

For the reasons stated above we conclude that the Circuit Court of Jefferson County acted outside the scope of its authority in entering an "Administrative Order" which purported to control the discretion of the magistrate court to grant or deny a motion to dismiss warrants issued by the magistrate court and that such order is void as a matter of law. The writ of prohibition is awarded to restrain implementation of the order.

*Writ granted.*