IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2024 Term

_____

No. 24-384

_____

FILED

November 12, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. STEPHEN CROSS,
Petitioner,

v.

THE HONORABLE DAVID H. WILMOTH, JUDGE OF THE CIRCUIT COURT OF
RANDOLPH COUNTY; BRYAN LANHAM, SUPERINTENDENT OF TYGART
VALLEY REGIONAL JAIL; AND THE STATE OF WEST VIRGINIA,

Respondents.
_____

Petition for a Writ of Prohibition and Habeas Corpus

WRIT GRANTED IN PART AND DENIED IN PART
_____

Submitted: October 23, 2024
Filed: November 12, 2024

Ryan McCune Donovan, Esq.
J. Zak Ritchie, Esq.
Maureen F. Gleason, Esq.
Hissam Forman Donovan Ritchie
PLLC
Charleston, West Virginia
Attorneys for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Andrea Nease Proper, Esq.
Deputy Attorney General
Michele Duncan Bishop, Esq.
Senior Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Attorneys for the Respondents

Bryan Lanham, Superintendent of Tygart Valley Regional Jail, and the State of West Virginia

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syllabus point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law,

should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3. "[S]pecific reasons must be given by the prosecutor for the dismissal [under West Virginial Rule of Criminal Procedure 48(a)] so that the trial court judge can competently decide whether to consent to the dismissal." Syllabus point 11, in part, *Myers v. Frazier*, 173 W. Va. 658, 319 S.E.2d 782 (1984).

4. Pursuant to Rule 48(a) of the West Virginia Rules of Criminal Procedure, when the State seeks a dismissal and the defendant consents, the court must determine whether dismissal is consistent with the public interest in the fair administration of justice. A dismissal meets this standard if the State acts in good faith at the time the State seeks dismissal. A motion that is not motivated by bad faith must be granted.

**BUNN, Justice:**

Petitioner Stephen Cross, the defendant in the underlying action, invokes this Court's original jurisdiction and chiefly seeks a writ of prohibition to prevent the Honorable David. H. Wilmoth, Judge of the Circuit Court of Randolph County, from enforcing the circuit court's order denying the State's motion to dismiss the indictment charging Mr. Cross with murder and using a firearm during the commission of a felony. The State's motion to dismiss asserted that Mr. Cross's actions were justified by self-defense and that it was "unaware of any evidence from the investigation that can prove, beyond a reasonable doubt that the defendant did not act in self-defense." The court denied the State's motion, positing that the case must proceed to trial "to avoid public misconception of the court system and the case," and insisting that, because a grand jury had returned the indictment, a petit jury must determine whether self-defense justified Mr. Cross's actions. We grant the writ in part as to the circuit court's order denying the State's uncontested motion to dismiss because the circuit court clearly erred and exceeded its legitimate powers by denying the State's motion, because not granting the writ would damage Mr. Cross in a way uncorrectable on appeal, and because the circuit court's order raises issues of law of first impression in West Virginia.

Mr. Cross also seeks a writ of prohibition relating to the circuit court's orders sealing certain filings and precluding counsel and the parties from publicly discussing

1

certain matters related to the filings. As he has failed to establish his entitlement to a writ prohibiting the orders' enforcement, we deny the writ as to those orders.[1]

# I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Stephen Cross and his family lived in Randolph County, West Virginia, near the Chenoweth family.[2] The Cross family owned ducks that roamed freely on the Cross property and used a neighbor's nearby pond. A few weeks prior to late March 2023, Mr. Cross told Justin Chenoweth ("Justin") he believed he saw a Chenoweth dog harassing and killing the ducks and asked Justin to keep the dog away from the ducks. Shortly before that conversation, Justin had observed a Chenoweth dog belonging to his sister and brother-in-law coming home with a duck head in its mouth.[3]

---

[1] To the extent that Mr. Cross seeks a writ of habeas corpus seeking release from the Tygart Valley Regional Jail, this request is moot. At the time of oral argument, the jail had previously released him, as the circuit court placed him on home confinement. We need not address here whether pre-conviction home confinement triggers habeas corpus relief, as he has not sought that relief.

[2] In a filing with the circuit court, Mr. Cross and the State stipulated to the facts regarding the interactions between Mr. Cross and the Chenoweths, among other facts.

[3] Justin relayed this information to law enforcement later.

On March 27, 2023, Mr. Cross shot and killed the dog. Justin and his brother-in-law went looking for the dog and drove to Mr. Cross's home. There, Mr. Cross came out of his house and eventually admitted to shooting the dog when it harassed his ducks.[4] Justin sent his brother-in-law home to avoid a physical confrontation, while Justin and Mr. Cross kept talking. Once home, the brother-in-law told his wife, who then woke up her father, Jonathan Chenoweth ("Mr. Chenoweth"). She told Mr. Chenoweth that Mr. Cross killed her dog.

Mr. Chenoweth, who stood six feet, one inch tall and weighed 235 pounds, then drove his side-by-side all-terrain vehicle halfway down Mr. Cross's driveway, parked, and headed toward Mr. Cross "cussing and ranting." Mr. Cross showed no aggression toward Mr. Chenoweth, but Justin, in an attempt to deescalate the situation, restrained his father to keep his father from getting closer to Mr. Cross. Justin persuaded Mr. Chenoweth to leave the Cross home to return to the Chenoweth home. Justin followed his father, who drove the side-by-side. Yet, instead of returning home, Mr. Chenoweth turned the side-by-side around and sped toward the Cross property. When he entered the driveway gate, approximately 117 feet from Mr. Cross, Mr. Chenoweth drove quickly and directly toward Mr. Cross.

---

[4] The State and Mr. Cross agreed that West Virginia law permitted Mr. Cross to shoot the dog when it harassed his ducks.

Mr. Cross rapidly fired seven shots toward Mr. Chenoweth. A neighbor's home security system recording showed that 1.2 seconds elapsed from the first to the last shot. Five shots hit Mr. Chenoweth. When the side-by-side came to a sliding stop, its front end was situated past where Mr. Cross stood less than a second before. Mr. Cross's wife called 911 to report that a man tried to run over Mr. Cross and she needed help. Law enforcement arrived, and when law enforcement arrested Mr. Cross, someone asked, "What happened here?" Mr. Cross replied, "He tried to kill me. He tried to run over me."

A grand jury returned a two-count indictment on October 30, 2023, alleging that Mr. Cross murdered Mr. Chenoweth (Count One), and used a firearm during the commission of the murder (Count Two). After the indictment was returned, the Randolph County Prosecuting Attorney advised the circuit court that he had a conflict of interest and the court appointed Mr. Brian Hinkle, the Upshur County Prosecuting Attorney, as special prosecuting attorney.

Meanwhile, Mr. Cross retained an expert witness, Eric Smith, a former police officer in Charleston, West Virginia, and the Chief of Security and Director of Public Safety at the University of Charleston, to testify regarding the use of force and the criminal investigation. Mr. Smith concluded that the vehicle traveled between twenty and twenty-five miles per hour toward Mr. Cross. The State filed a motion to exclude this testimony, and, in the same filing, notified the circuit court of a potential conflict of interest between

Mr. Smith and Mr. Hinkle. The State requested that Mr. Hinkle be allowed to withdraw should the court refuse the motion to exclude the testimony because he would have to cross-examine Mr. Smith.

At the direction of the circuit court, Mr. Hinkle submitted a request explaining that he should be replaced by another special prosecuting attorney due to the conflict. In the request, Mr. Hinkle also noted that he intended to seek the dismissal of the indictment because requiring Mr. Cross to stand trial, based on the facts of the case "would result in a manifest injustice." Mr. Hinkle explained that a recent trajectory analysis revealed the origination of the shots and that the evidence showed that Mr. Cross had fired his early shots from directly in front of the side-by-side. Mr. Hinkle asserted that Mr. Cross stood in his own driveway and "the alleged victim was the initial aggressor who then left the property only to then return in a manner which any reasonable person would consider threatening and potentially imminently capable of at least causing serious bodily injury." Mr. Hinkle noted that no evidence showed Mr. Cross as an aggressor. However, Mr. Hinkle explained that, because he relied on information from the expert witness, with whom he had a potential conflict due to a childhood friendship, a dismissal upon his motion would have an appearance of impropriety.

At a hearing on April 22, 2024, the circuit court allowed Mr. Hinkle to withdraw over Mr. Cross's objection. Two days later, the court entered an order noting its

5

awareness of "certain public statements regarding the circumstances of this case recently disseminated in the media by counsel." The order sealed the defendant's response opposing Mr. Hinkle's motion to withdraw and ordered that "[n]o party or counsel . . . shall disseminate [Mr. Hinkle's] reason for his request for disqualification from this case nor his assessment of the facts of the case nor his assessment of the appropriate disposition of this case." The court noted that "[a]ny further public statement" would be "construed" as "an overt effort to taint the outcome of this case in the event it proceeds to jury trial," punishable by contempt and subject to referral to the Office of Disciplinary Counsel.

Grant County Prosecuting Attorney John Ours replaced Mr. Hinkle. Mr. Ours, on behalf of the State, filed a motion to dismiss the indictment without prejudice on May 24, 2024. He represented that the evidence had significantly evolved since the indictment. The motion set forth several pages of facts to which the parties stipulated, including (1) an explanation of the potential speeds Mr. Chenoweth had to be traveling toward Mr. Cross at the time of the first shot, ranging between more than seventeen to thirty-four miles per hour; (2) the eyewitness estimates of the distance from the side-by-side to Mr. Cross at the time of the first shot, ranging between twenty-five and fifty feet away; and (3) a conclusion that the side-by-side slid past where Mr. Cross stood less than a second before. The State asserted that Mr. Cross's actions "were justified by self-defense" and represented that it "is unaware of any evidence from the investigation that can prove, beyond a reasonable doubt that the defendant did not act in self-defense." In the motion to

dismiss, the State interpreted West Virginia Rule of Professional Conduct 3.8, entitled "Special Responsibilities of a Prosecutor," and its Comments 1 and 7 "to explicitly mean that the State should not proceed to trial in this case." The motion explained that Comment 1 includes the prosecutor's obligation "to see . . . that guilt is decided upon the basis of sufficient evidence" and Comment 7 requires a prosecutor who "knows of new, credible and material evidence" that creates "a reasonable likelihood that a person outside of the prosecutor's jurisdiction was convicted of a crime that the person did not commit" to promptly disclose that information to a court or appropriate authorities in the jurisdiction.[5]

Meanwhile, the circuit court entered a May 31, 2024 order sealing the State's motion to dismiss, precluding the parties and counsel from disseminating the prosecutor's "reasoning for his request for dismissal[,] his assessment of the facts of the case[,] his assessment of the appropriate disposition of this case[, or] his assessment of [s]elf-[d]efense," and again reiterating its warnings that any public statement "will be construed . . . as an overt effort to influence the jury pool and thereby taint the outcome of

---

[5] Comment 1 to Rule 3.8 of the West Virginial Rules of Professional Conduct includes the following instruction:

> A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it[] specific obligations to see that the defendant is accorded procedural justice, that guilt is decided upon the basis of sufficient evidence, and that special precautions are taken to prevent and to rectify the conviction of innocent persons.

7

this case in the event it proceeds to jury trial," punishable by contempt and subject to an Office of Disciplinary Counsel referral.

The parties argued the State's motion to dismiss at an in camera hearing. Mr. Ours advised the court that after extensively reviewing the matter, he believed the charges should be dismissed. He explained that he met with an investigator and instructed the investigator to do slide tests with the side-by-side to determine its approximate speed. Mr. Ours stated that:

> Your honor, this case and this decision is the hardest thing I've done in 49 years of practicing law. I didn't think I could ever do this, but the more I looked at it, the more I was sure it was the right thing to do. I won't bore you with going through the motion. I figure you probably have it memorized by now. I'm convinced that it is the right thing to do and that's why I did it.

He also reported, after being questioned by the court, that Mr. Chenoweth's widow and son, Justin, opposed the dismissal. Mr. Cross's attorney agreed with the State's conclusion to dismiss the case, and noted that under West Virginia Rule of Criminal Procedure 48, the court needed to determine whether "any impropriety by the State or the defendant" had occurred, and whether the motion was "contrary to the public interest." Mr. Cross's attorney argued that no impropriety had occurred and observed the "very thorough investigation undertaken by the State and the State's investigators."

The circuit court denied the State's motion verbally at the hearing. While the court acknowledged that the prosecutor had certain ethical responsibilities under the Code of Professional Conduct, it admonished that the prosecutor also had "a different ethical obligation" here "to see this through in conjunction with Rule 48 [of the West Virginia Rules of Criminal Procedure] in terms of the public perception of the criminal proceeding and the circumstances of this case." The court reasoned that the grand jury returned an indictment in this case, and "in light of the fact that there's been an indictment returned in this case that it is incumbent that a jury hear the evidence in this case and make a decision based upon that evidence." Then, the court rationalized, the petit jury members can determine whether they believe that Mr. Cross acted in self-defense. The court also alluded to "other circumstances," although it would not "get into the details of it" that "could be viewed differently and the jury needs to have the opportunity to hear the evidence and make that decision." The court further explained that part of the Rule 48 consideration was "the public's perception of what's going on and the [c]ourt system and the evidence in this case." Stating that it was "presented originally with a plea to involuntary manslaughter," the court explained that, because Mr. Cross purportedly would accept that plea, "that is [an] indication also that the jury needs to hear this because a jury could interpret all of this information separately, differently."

Mr. Cross's attorney objected to the circuit court's ruling. Mr. Cross's counsel and the circuit court disagreed as to the status of the plea negotiations, but the

9

record is clear that the court was never presented with a written plea agreement from the parties.[6]

Mr. Cross's counsel also objected to sealing the hearing. The court explained that it wanted to avoid media attention regarding the motion to dismiss and that it sought "a jury that is untainted by any presentation of what in a vacuum is presented" by the prosecution. The court declared that after the April hearing, an attorney for Mr. Cross went directly to the news media to disclose the details of the court proceedings.

An order followed, echoing much of the circuit court's discussion at the hearing, and specifically stating, among other reasons, "that the Defendant had to go to trial to avoid public misconception of the court system and the case."

Mr. Cross then filed a petition for a writ of prohibition, asking this Court to (1) prevent the circuit court from enforcing the order denying the State's motion to dismiss and (2) prevent the circuit court from enforcing its orders sealing certain documents and precluding the parties and counsel from discussing certain matters.

---

[6] We recently cautioned against the circuit court's involvement in plea agreement negotiations pursuant to the prohibition in West Virginia Rule of Criminal Procedure 11. *See generally State v. Adkins*, 249 W. Va. 688, 695, 901 S.E.2d 52, 59 (2024) (finding a violation of Rule 11 and recognizing that "a circuit court's improper participation in plea negotiations may lead to a perception of bias if the case ultimately goes to trial").

## II.

## STANDARD FOR ISSUANCE OF WRIT

"Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). In cases where the petitioner asserts that the lower court exceeded its legitimate powers, this Court has discretion to issue the writ:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ had no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

11

## III.

## DISCUSSION

The circuit court clearly erred and exceeded its legitimate powers when it denied the State's unopposed motion to dismiss the indictment, where no evidence showed that the prosecutor acted with anything other than good faith in requesting the dismissal, and the prosecutor informed the court of the reasons for the dismissal. After we briefly review the requirements of Rule 48(a) of the West Virginia Rules of Criminal Procedure, discuss the circuit court's limited discretion to deny the State's request to dismiss an indictment, and consider the *Hoover* factors, we issue the writ of prohibition as to the court's order denying the State's motion to dismiss. *See* Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12. We also explain that, insofar as Mr. Cross also requests a writ of prohibition relating to the circuit court's orders regarding publicity, we deny that request.

### A. The State's Motion to Dismiss the Indictment

**1.** **The circuit court abused its legitimate powers by denying the State's motion to dismiss the indictment.** The role of the circuit court when the State seeks the dismissal of an indictment under Rule 48(a) is limited. To accurately assess the role of the circuit court, we start by examining the role of the State in criminal prosecutions. Our Court has long recognized that the State, though the prosecuting attorney, is responsible for determining which charges to pursue in a criminal case. *See State ex rel. Skinner v. Dostert*, 166 W. Va. 743, 750, 278 S.E.2d 624, 630 (1981) ("The prosecuting

12

attorney is the constitutional officer charged with the responsibility of instituting prosecutions and securing convictions on behalf of the State of those who violate the criminal law." (citing W. Va. Const. art. 9, § 1 and W. Va. Code § 7-4-1)). Likewise, generally the State may decide to abandon criminal charges when it lacks evidence to convict. *See id*. at 752, 278 S.E.2d at 631 ("The prosecuting attorney, in his sound discretion, may refrain from prosecuting a cause or, having commenced a prosecution, may move the dismissal of a cause, when in good faith and without corrupt motivation or influence, he thinks that the guilt of the accused is doubtful or not capable of adequate proof. . . . The responsibility of a prosecutor is to seek justice, not merely to convict." (internal citations omitted)).

While the State has broad powers relating to charging decisions and terminating prosecutions, the State may not dismiss an indictment on its own; it must seek permission from the court. Rule 48(a) of the West Virginia Rules of Criminal Procedure governs the dismissal of an indictment when requested by the State:

> *(a) By attorney for state. —* The attorney for the state may by leave of court file a dismissal of an indictment, information or complaint, and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

Undoubtedly, the Rule provides that when the State seeks to terminate a prosecution, dismissal requires "leave of court." W. Va. R. Crim. P. 48(a). "[S]pecific reasons must be given by the prosecutor for the dismissal [under West Virginial Rule of Criminal Procedure

13

48(a)] so that the trial court judge can competently decide whether to consent to the dismissal." Syl pt. 11, in part, *Myers v. Frazier*, 173 W. Va. 658, 319 S.E.2d 782 (1984); *see id.* at 668, 319 S.E.2d at 793 (collecting cases). Then, the court must determine whether the dismissal is "consonant with the public interest in the fair administration of justice."[7] Syl pt. 12, in part, *Myers*, 173 W. Va. 658, 319 S.E.2d 782; *see id.* at 668, 319 S.E.2d at 793 (collecting cases). We have not considered the public interest standard in the circumstance the circuit court faced here—where the State seeks an uncontested dismissal because the State is not aware of any evidence that can prove beyond a reasonable doubt that a defendant did not act in self-defense.

An examination of the purpose of Rule 48(a) assists in our inquiry in determining the appropriate public interest standard. Rule 48(a)'s primary purpose is to protect the defendant against prosecutorial harassment. The United States Supreme Court,

---

[7] *Myers v. Frazier* addressed the procedure courts should use for dismissals in the context of a plea agreement and a resignation agreement and contains language suggesting that a court considering a motion to dismiss from the State pursuant to West Virginia Rule of Criminal Procedure 48(a) must employ the public interest standard related to Rule 11 plea agreements. 173 W.Va. 658, 319 S.E.2d 782 (1984); *see also* Syl. pt. 12, *id.* Nonetheless, the *Myers* court recognized that "there may be occasions where the dismissal of charges is unrelated to a plea bargain," including "insufficiency of proof" and when a prosecutor believes in good faith "that the accused is innocent of the crime . . . if properly established." 173 W. Va. at 669 n.16, 319 S.E.2d at 793 n.16 (internal quotations and citations omitted). Here, the State seeks to dismiss the charges for reasons including that it "is unaware of any evidence from the investigation that can prove, beyond a reasonable doubt that [Mr. Cross] did not act in self-defense." These circumstances are unrelated to a plea agreement, so we consider authority beyond *Myers* to assess Mr. Cross's petition.

14

when considering the federal version of Rule 48(a)[8] recognized that the "principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e. g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15, 98 S. Ct. 81, 85 n.15, 54 L. Ed. 2d 207 (1977) (per curiam); *see also United States v. Hamm*, 659 F.2d 624, 628 (5th Cir. 1981) (holding that the "leave of court" requirement "is primarily intended to protect the defendant against prosecutorial harassment").

Rule 48(a) implicates the separation of powers doctrine, and particularly where the defendant consents, the court has limited discretion to deny the prosecution's motion.[9] *See United States v. Smith*, 55 F.3d 157, 158-60 (4th Cir. 1995). Certainly, the "by leave of court" language from Rule 48(a) creates a check on the potential abuse of power by the executive branch. *United States v. Cowan*, 524 F.2d 504, 512-13 (5th Cir. 1975). Still, Rule 48(a) "should and can be construed to preserve the essential judicial function of protecting the public interest in the evenhanded administration of criminal

---

[8] Federal Rule of Criminal Procedure 48(a), substantially similar to our Rule 48(a), states, "The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent."

[9] We need not decide, at this juncture, the applicable public interest standard when the defendant objects to dismissal under Rule 48(a).

justice without encroaching on the primary duty of the Executive to take care that the laws are faithfully executed." *Id.* In examining the Rule and its history, the Fifth Circuit Court of Appeals explained the balance of power between the Executive Branch and the Judicial Branch when considering the court's authority under Rule 48(a):

> The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. *The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest.* In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values.

*Id.* at 513 (emphasis added).

In other words, the State has "the best position to evaluate the charges and the evidence to determine if prosecution should continue." *State ex rel. Koppy v. Graff*, 484 N.W.2d 855, 858 (N.D. 1992). Courts have repeatedly recognized that, in the context of dismissals sought by the prosecution, a court "may not substitute its judgment for that of the prosecutor, but is limited in its function to a determination as to whether the prosecutor has acted improperly." *State v. Aubol*, 244 N.W.2d 636, 640 (Minn. 1976) (footnote omitted); *see also People v. Lichtenstein*, 630 P.2d 70, 73 (Colo. 1981) (discussing

16

Colorado's version of the rule and noting that a court "should not arbitrarily substitute its own decision for that of the prosecution").[10]

In *United States v. Smith*, the Fourth Circuit Court of Appeals considered a district court's denial of the United States' motion to dismiss an indictment after a defendant pled guilty when a jury had subsequently acquitted the defendant's codefendants and the defendant cooperated and testified truthfully. *See generally Smith*, 55 F.3d 157. The United States Attorney opined that had the defendant not pleaded guilty, he would have been acquitted, and that dismissal "promoted credibility in future attempts to enlist defendants to plead guilty, cooperate with the government, and truthfully testify in return for lenient treatment." *Id.* at 160. The federal district court "made its own assessment of the public interest" and concluded that the defendant's "guilty plea and corroborating testimony constituted substantial evidence of his guilt" in ruling that dismissal "would be clearly contrary to manifest public interest." *Id*. The district court also found "a lack of bad faith" on the part of the prosecution. *Id.* The Fourth Circuit reversed, determining that a trial court's consideration of the government's motion under Rule 48(a) "should be decided

---

[10] As the United States Supreme Court also recognized in *Rinaldi v. United States*, the Supreme Court has not "delineated" "the circumstances in which . . . discretion [under Rule 48(a)] may properly be exercised." 434 U.S. 22, 29 n.15, 98 S. Ct. 81, 85 n.15, 54 L. Ed. 2d 207 (1977) (per curiam). The *Rinaldi* Court recognized that other courts have interpreted the Rule to allow a court "to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest." *Id.* at 29-30 n.15, 98 S. Ct. at 85 n.15, 54 L. Ed. 2d 207.

17

by determining whether the prosecutor acted in good faith at the time he moved for dismissal." *Id.* at 159. The appellate court concluded that "[a] motion that is not motivated by bad faith is not clearly contrary to manifest public interest, and it must be granted." *Id.*[11] Any "disservice to the public interest" rests "in the motive of the prosecutor," and examples of disservice could include "the prosecutor's acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled." *Id.* The Fourth Circuit explained that "[a] substantial, reasonable doubt about the guilt of a defendant that arose after conviction is evidence of good faith." *Id*. at 160. While the prosecutor's reasoning for moving to dismiss in *Smith* differs from the reasons presented to the circuit court here, we still agree with the determination of the Fourth Circuit that a court, when considering whether the State's unopposed motion to dismiss pursuant to Rule 48(a) is in the public interest, must grant the motion if the State acts in good faith at the time it moves for dismissal.

In consideration of the authorities described above, we now hold that, pursuant to Rule 48(a) of the West Virginia Rules of Criminal Procedure, when the State seeks a dismissal and the defendant consents, the court must determine whether dismissal is consistent with the public interest in the fair administration of justice. A dismissal meets

---

[11] *See also United States v. Hayden*, 860 F.2d 1483, 1487 (9th Cir. 1988) ("If the . . . court finds that the prosecutor is acting in good faith in making its Rule 48(a) motion, it should grant the motion; conversely, Rule 48(a) empowers the . . . court to exercise its discretion in denying the motion when it specifically determines that the government is operating in bad faith.").

18

this standard if the State "act[s] in good faith" at the time the State seeks dismissal. *See Smith*, 55 F.3d at 159. "A motion that is not motivated by bad faith" must be granted. *Id.*

In the present case, the State's motivation to dismiss the indictment was in good faith, and thus consistent with the public's interest in the fair administration of justice. Furthermore, the circuit court, in its extensive consideration of the motion, did not find that the State acted in bad faith. The State alleged in its motion to dismiss the indictment that it was "unaware of any evidence from the investigation that can prove, beyond a reasonable doubt that the defendant did not act in self-defense." This information directly affected the State's burden at trial, because, in West Virginia, "[o]nce there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense." Syl. pt. 4, *State v. Kirtley*, 162 W. Va. 249, 252 S.E.2d 374 (1978). Moreover, the circuit court was aware of issues with the prosecution even before the State filed the motion. Mr. Hinkle, the first special prosecuting attorney, submitted a filing to the circuit court in April 2024 seeking disqualification due to a conflict, but also explained that requiring Mr. Cross to be tried in this case "would result in a manifest injustice," where "no evidence" supports that Mr. Cross "was the aggressor." A month later, with a new special prosecutor, the State presented a carefully considered motion seeking dismissal and concluding that Mr. Cross had reasonable grounds to believe that he was in imminent, intentionally deadly danger; that his actions were justified by self-defense; and that the

19

State knew of no evidence that could prove, beyond a reasonable doubt, that Mr. Cross did not act in self-defense. The State's position put forth in its motion to dismiss, bolstered by Mr. Ours's statements at the hearing, demonstrates a good faith basis for dismissal.

Yet the circuit court, in determining that Mr. Cross "had to go to trial to avoid public misconception of the court system and the case," substituted its own judgment for that of the prosecution to insist a trial must occur—reasoning that the defendant had been indicted, the court had considered a plea agreement, and the court was aware of unspecified "circumstances" requiring a jury to hear the case. While the State insisted that the evidence showed that Mr. Cross acted in self-defense, the court did not limit its inquiry to whether the prosecutor "acted in good faith" at the time the State sought dismissal. *Smith*, 55 F.3d at 159. The circuit court's denial of this motion is clearly erroneous, and, by denying the motion, the court exceeded its legitimate powers.

**2. A writ of prohibition should issue.** Having found that the circuit court exceeded its legitimate powers by refusing to dismiss the indictment at the State's request, we now apply the *Hoover* factors to conclude that Mr. Cross is entitled to the requested writ of prohibition preventing the circuit court from enforcing its denial of the State's motion to dismiss. Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12. First, for the same reasons that the circuit court exceeded its legitimate powers, the circuit court's order is "clearly erroneous as a matter of law," satisfying the third *Hoover* factor. *Id.*, in part. The

circuit court failed to dismiss the indictment, upon the State's good faith request, when the defendant consented to the dismissal, the State did not act in bad faith, and the court substituted its judgment for that of the State. Additionally, as to the second *Hoover* factor, Mr. Cross "will be damaged or prejudiced in a way that is not correctable on appeal," as he will be forced to stand trial. *Id.*, in part. Mr. Cross has "no other adequate means, such as direct appeal, to obtain the desired relief"—here, avoiding prosecution and being released from home confinement, the first *Hoover* factor. *Id.*, in part. Notably, as Mr. Cross points out, this Court has not addressed "the appropriate standard for granting a State's motion under Rule 48(a) for lack of sufficient evidence," so the circuit court's order raises an issue of law of first impression, the fifth *Hoover* factor. *Id.*, in part. For these reasons, we grant the writ of prohibition, in part, precluding the circuit court from enforcing its order denying the State's motion to dismiss the indictment. We further direct the court to grant the State's motion.

### B. The Circuit Court's Sealing and Public Statements Orders

Mr. Cross also seeks a writ of prohibition to preclude the circuit court from enforcing its orders sealing certain documents and preventing counsel and the parties from making public statements regarding aspects of the case relating to the prosecutors' assessment of the case and motives for dismissal. We refuse to grant the writ as it relates to these orders. A writ of prohibition is "an extraordinary remedy . . . reserved for extraordinary cases." *State ex rel. McGraw v. King*, 229 W. Va. 365, 371, 729 S.E.2d 200,

21

206 (2012) (per curiam). Significantly, Mr. Cross does not argue any of the *Hoover* factors in his petition for a writ of prohibition but focuses on the lack of analysis and evidence supporting the circuit court's orders. *See* Syl. pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12. As Mr. Cross has not established his entitlement to a writ of prohibition, we thus deny the writ, in part, pertaining to the sealed documents and the public statements about the case.

## IV.

## CONCLUSION

For the reasons stated above, this Court grants the writ of prohibition to prevent the circuit court from enforcing its order denying the State's motion to dismiss the two-count indictment returned against Mr. Cross. The Court denies the writ of prohibition relating to the circuit court's orders sealing certain documents and precluding the parties and counsel from discussing certain matters. The Clerk of Court is directed to issue the mandate forthwith.

Granted in part and denied in part.
Mandate to issue forthwith.